# STATE OF MICHIGAN

# COURT OF APPEALS

MAI ODEH,

Plaintiff-Appellant,

v

ABDELKARIM KHALIL ABUSHMAIES,

Defendant-Appellee.

UNPUBLISHED
March 17, 2015

No. 319181
Wayne Circuit Court
LC No. 12-111909-DO

Before: DONOFRIO, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right from a judgment of divorce entered September 27, 2013. For the reasons below, we affirm.

## I. BACKGROUND

Plaintiff and defendant met on an online dating website in April or May of 2011. At the time, plaintiff was living in Jordan in the Middle East. On July 8, 2011, the parties participated in a religious wedding ceremony in Jordan, and on July 14, 2011, the parties participated in a civil marriage ceremony in Jordan, which defendant described as the legal wedding ceremony according to Jordanian culture. Following the wedding, the parties moved to Portage, Michigan, where they lived between July 2011 and July 2012. On April 6, 2012, defendant purchased round trip tickets for plaintiff to visit Jordan, and plaintiff left on July 4, 2012. On September 5, 2012, while plaintiff was in Jordan, the parties entered a Jordanian divorce settlement and defendant paid plaintiff the equivalent of $35,000 as part of the settlement.

Plaintiff returned to the United States on September 11, 2012, and on September 24, 2012, she filed a divorce complaint against defendant in Wayne Circuit Court. On October 11, 2012, defendant filed a motion for summary disposition under MCR 2.116(C)(4), arguing that the court lacked subject matter jurisdiction over the parties because they obtained a valid Jordanian divorce, which was registered in Kalamazoo County on October 2, 2012. Following a hearing on November 1, 2012, the court denied defendant's motion.

On July 23, 2013, defendant filed a motion for an annulment, claiming the parties never engaged in sexual relations during the marriage. On July 24, 2013, plaintiff's counsel filed an emergency motion to withdraw because plaintiff owed substantial legal fees, which she was unable to pay. On July 29, 2013, plaintiff filed a motion opposing her counsel's motion to

-1-

withdraw, arguing that withdrawal on the eve of trial would cause her significant hardship. The case proceeded to trial on July 30, July 31, and August 7, 2013. On the first day of trial, the court denied defendant's motion for an annulment, denied plaintiff's counsel's motion to withdraw, and proceeded to take testimony.

On September 27, 2013, the court entered a judgment of divorce, awarding each party their respective premarital property, awarding plaintiff a 50% share of any retirement benefits defendant earned during their marriage, awarding plaintiff $1,967 in monthly spousal support for 15 months, and awarding plaintiff $5,000 in attorney fees and $1,000 in costs. On appeal, plaintiff contests the lower court's order regarding the division of marital property, spousal support, and attorney fees.

## II. STANDARD OF REVIEW

We review for clear error a trial court's factual findings in a divorce proceeding. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Gates v Gates*, 256 Mich App 420, 432-433; 664 NW2d 231 (2003). A trial court's factual findings are considered presumptively correct on appeal, and the appellant bears the burden of demonstrating clear error. *Ewald v Ewald*, 292 Mich App 706, 723; 80 NW2d 396 (2011). If the trial court's factual findings were not clearly erroneous, we must then determine whether the trial court's dispositional rulings awarding spousal support or marital property were fair and equitable in light of the circumstances. *Gates*, 256 Mich App at 423. We will affirm the decision of the trial court if we are not definitely and firmly convinced that a distribution was inequitable. *Id.*

## III. FACTUAL FINDINGS

Plaintiff first argues that the lower court clearly erred in finding that the parties equally contributed to the breakdown in the marital relationship. We disagree. At trial, plaintiff presented evidence that defendant engaged in extramarital relationships with other women. Defendant testified that plaintiff refused to have sexual relations with him. On appeal, plaintiff argues that defendant's testimony was not credible because he required her to use birth control to prevent pregnancy, and because she testified that the parties engaged in sexual relations during their marriage. At trial, defendant testified that plaintiff used birth control to address her medical and hormonal problems and not for birth control purposes. "This Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses." *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997). Because the lower court's assessment of credibility was integral to its finding that the parties equally contributed to the breakdown of the marital relationship, plaintiff has not demonstrated that the lower court clearly erred in finding the parties were equally at fault.

Plaintiff also argues that the lower court erred in finding that a parcel of property in Jordan owned by defendant was not marital property because defendant allegedly purchased the property after the parties completed their religious wedding ceremony. At trial, plaintiff produced a document that she claimed indicated defendant purchased the Jordan property on July 12, 2011. Defendant testified that he purchased the land in 2006 and merely registered it and updated the taxes on July 12, 2011. Again, where there is conflicting testimony, we generally

defer to a trial court's ability to assess the credibility of witnesses. *Draggoo*, 223 Mich App at 429. Moreover, even if defendant purchased the land on July 12, 2011, the parties testified that they were not civilly married under Jordanian law until July 14, 2011. The lower court did not clearly err in finding the Jordan property was defendant's premarital property.

## IV. MARITAL PROPERTY

Plaintiff argues that the lower court erred in only awarding her 50% of any retirement benefits earned by defendant over the course of their marriage. We disagree.

The goal of distributing marital property is to provide "an equitable division in light of all the circumstances." *McNamera v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). There is no mathematical formula or rule trial courts must follow in distributing marital assets. *Sparks v Sparks*, 440 Mich 141, 158-159; 485 NW2d 893 (1992). However, insofar as they are relevant to the circumstances of the case, the following factors should be considered when dividing martial property:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks*, 440 Mich at 159-160.]

In assessing these factors for the purpose of distributing marital property, courts must " 'not assign disproportionate weight to any one circumstance.' " *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008), quoting *Sparks*, 440 Mich at 158.

In this case, the parties were married for only two years and had no children together. The lower court found that plaintiff did not significantly contribute to any of defendant's premarital property during the marriage. Although plaintiff testified that she frequently cleaned the house in Portage, Michigan, defendant testified that plaintiff did not do housework and he hired a cleaning service during their marriage. At the time of the divorce, both parties were middle-aged, and both were capable of working. Although defendant, a vascular surgeon, had a greater income earning capacity than plaintiff, plaintiff was previously self-sufficient and worked at a university, in graphic design, and as an interpreter.

Testimony at trial revealed that both parties were in relatively good health and that neither party had special needs. Although plaintiff testified that she suffered from emotional issues because of the divorce, she did not present evidence that her condition kept her from working. The lower court found that both parties contributed to the breakdown of the marital relationship. Regarding general equitable principles, plaintiff already received $35,000 from the Jordanian divorce settlement. Plaintiff presented no evidence that any of defendant's properties increased in value during the marriage. In light of these circumstances, the lower court did not abuse its equitable discretion in awarding plaintiff all items in her personal possession and a 50% share of defendant's retirement benefits earned during the marriage.

## V. SPOUSAL SUPPORT

Plaintiff next argues that the lower court erred in awarding her only $1,967 in spousal support for 15 months following the divorce. We disagree.

An award of spousal support is intended "to balance the incomes and needs of the parties" so neither will be impoverished as a result of the divorce. *Moore*, 242 Mich App at 654. We consider the following factors to determine whether an award of support was equitable:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties of the parties to the joint estate, and (12) general principles of equity. [*Thames v Thames*, 191 Mich App 299, 308; 477 NW2d 496 (1991).]

In deciding whether to impute income to a party, we consider the following equitable factors:

> [1] employment experience, [2] educational level, [3] physical and mental disabilities, [4] whether the parties' children reside in the individual's home, [5] availability of employment, [6] wage rates, [7] special skills and training, and [8] whether the individual can actually earn the imputed income. [*Stallworth v Stallworth*, 275 Mich App 282, 286; 738 NW2d 264 (2007).]

In this case, the parties were equally at fault in the breakdown of the marital relationship. The marriage lasted only two years. The lower court found that both parties were able to work and imputed 40 hours per week of minimum wage income to plaintiff, despite the fact that she was unemployed. Plaintiff previously worked at a university, in graphic design, and as an interpreter, had a bachelor's degree, and took multiple educational courses throughout the parties' marriage. The parties had no children together, and plaintiff found work in the geographical region of Wayne County as an interpreter making $10 an hour during the proceedings. Plaintiff had special skills and training in graphic design and interpretation, and was previously self-sufficient. The court's decision to impute 40 hours a week of minimum wage income to plaintiff was not inappropriate under these circumstances.

Considering the remaining factors, plaintiff was awarded a 50% share of the retirement benefits defendant accumulated during the parties' marriage, and $35,000 in cash as part of the Jordanian divorce settlement. Although defendant had a greater income potential than plaintiff, plaintiff did not present evidence that she was incapable of working. Plaintiff was 44 years old and defendant was 52 years old at the time of the divorce. Defendant had a gross income of approximately $500,000 during the parties' marriage. Although defendant had significant spousal and child support obligations from a prior marriage, his income was sufficient to cover an additional spousal support obligation.

Plaintiff claimed that she had to borrow money from family members to live. Although plaintiff argues that she is unable to work because of her emotional problems, she did not present

evidence that her condition kept her from obtaining employment. Neither of the parties had special needs to consider. Likewise, both of the parties were in relatively good physical health at the time of the divorce, although plaintiff testified that she is currently receiving treatment for anxiety and depression.

The lower court awarded plaintiff $1,967 in spousal support each month for a period of 15 months. The court explained that this amount represented a spousal support award of $4,300 for 15 months ($64,500), less the amount of the Jordanian divorce settlement ($35,000), divided by 15 months. In light of the fact that this was a short-term marriage without children, neither of the parties had significant physical challenges or special needs, both of the parties were within working age and had employable skills, and plaintiff presented no evidence that her emotional problems prevented her from working, the lower court did not abuse its equitable discretion in awarding plaintiff $1,967 in spousal support for 15 months following the divorce.

VI. ATTORNEY FEES

Lastly, plaintiff argues that the lower court erred in granting her only $5,000 in attorney fees and $1,000 in costs. We again disagree.

We review a trial court's decision to award attorney fees in a divorce proceeding for an abuse of discretion. *Stoudemire v Stoudemire*, 248 Mich App 325, 344; 639 NW2d 274 (2001). An abuse of discretion exists if a trial court's decision is so " 'palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Fletcher v Fletcher*, 447 Mich 871, 879-880; 526 NW2d 889 (1994), quoting *Spalding v Spalding*, 355 Mich 382, 384-385, 94 NW2d 810 (1959).

"A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action . . . ." MCR 3.206(C)(1). But the requesting party must "allege facts sufficient to show that . . . the party is unable to bear the expense of the action, and that the other party is able to pay." MCR 3.206(C)(2). In a divorce action, attorney fees are only awarded when necessary to allow a party to defend or prosecute a suit. *Gates*, 256 Mich App at 438. Generally, parties should not be required to invade their support assets to cover attorney fees. *Id.* The party requesting attorney fees bears the burden of proving their financial need, the ability of the other party to pay, and that the amount of the claimed fees is reasonable. *Ewald*, 292 Mich App at 725. In assessing what attorney fees are reasonable, the trial court may consider factors including the following:

> [T]he skill, time, and labor involved, the fee customarily charged in the locality for similar services in 'high end' divorce actions, the likelihood that plaintiff's counsel's time commitment to this case precluded other employment, the amount in question and the results achieved, the expense incurred, the professional standing and experience of the attorney, and the retainer agreement. [*Olson v Olson*, 256 Mich App 619, 637; 671 NW2d 64 (2003).]

In this case, plaintiff had three different attorneys represent her during the proceedings: first, Hayssam El Kodssi, second, Issam Abbas, and third, Nabih Ayad. Ayad also had two other

attorneys at his office work on matters relating to plaintiff's case. The lower court opinion stated that plaintiff requested the outstanding legal fees owed to Ayad's law firm, in the amount of $31,549.49.[1] In its judgment of divorce, the lower court awarded plaintiff $5,000 in attorney fees and $1,000 in costs.

On October 15, 2013, plaintiff filed a motion for reconsideration, including a request for $18,142 in attorney fees. Attached as an exhibit to her motion, plaintiff presented documents showing that she paid Kodssi $2,335, paid Abbas $5,620 and still owed him $5,000, paid Ayad $5,000 as a retainer fee when he first began representing her, and paid $187 ordering a deposition transcript. In its order denying plaintiff's motion, the court stated that, at the time of trial, plaintiff only requested the attorney fees owed to Ayad for his three-month period of representation before trial, and did not request any other attorney fees.

As the trial court noted, a review of the record indicates that at trial, plaintiff only specifically requested the outstanding balance of attorney fees owed to Ayad, and did not ask the court to reimburse her for legal expenses she had already paid, or for the outstanding balance owed to her prior attorneys. A trial court is under no obligation to award attorney fees in the absence of a request by a party and a proper showing of proof. MCR 3.206(C)(1); see also *Ewald*, 292 Mich App at 724 ("Attorney fees are not recoverable as of right in a divorce action . . . ."). Accordingly, when the trial court assessed the reasonableness of plaintiff's request, it considered only the period of Ayad's representation between April 2013 and July 2013.

The lower court considered the fact that plaintiff's request covered only a three-month period of representation, and that the case involved a straightforward divorce proceeding for a short-term marriage without children or significant marital property. The court also noted that the average hourly billing rate for someone of Ayad's experience was $228 and not $400, that the matter was simple enough that it would not preclude Ayad from working on other cases, and that the results achieved were average. Plaintiff had also already paid Ayad $5,000 as part of a retainer agreement. In light of these circumstances, the lower court did not abuse its discretion in awarding plaintiff $5,000 in attorney fees and $1,000 in costs pursuant to her request to cover the amount owed to Ayad for his representation in the months before trial.

Affirmed.

/s/ Pat M. Donofrio
/s/ Michael J. Riordan
/s/ Michael F. Gadola

---

[1] The lower court stated that Ayad provided the court with evidence showing plaintiff owed $31,549.49; however, an actual copy of the billing statement does not appear in the record. A billing statement from July 24, 2013, prior to trial, reveals that plaintiff owed Ayad's law firm $25,749.59, and that Ayad and his two associates billed 72.5 hours of work between June 2013 and July 2013 at rates of $250 and $400 respectively. Billing statements for the dates covering the three days of trial are not included in the record.