GATES v GATES

Docket No. 236158. Submitted March 12, 2003, at Grand Rapids. Decided
May 1, 2003, at 9:00 A.M. Leave to appeal sought.

Ricky L. Gates obtained a judgment of divorce from Jeanné M. Gates
in the Branch Circuit Court, Michael H. Cherry, J., which judgment
awarded the plaintiff $566,608 in assets and the defendant $570,775
in assets, and awarded the defendant spousal support and attorney
fees. The defendant appealed, raising several issues regarding the
division and valuation of the marital property, her award of spousal
support and attorney fees, and the denial of her motion to disqual-
ify the trial judge.

The Court of Appeals *held*:

1. The defendant's argument that the trial court failed to consider
her financial position in awarding her the marital home fails
because the record reveals that the trial court made specific find-
ings of fact regarding the parties' life status, earning abilities, and
general principles of equity in dividing the marital property.

2. The trial court did not err in reducing the value of the plain-
tiff's business interest in light of a debtor business's bankruptcy
because the parties' stipulation regarding the value of the plaintiff's
business interest was specifically predicated on the validity of the
debtor business's debt. Conversely, the trial court did not err in
refusing to adjust the value of certain stock and club memberships
because it was unclear which stock was the subject of the valua-
tion challenge, and the defendant did not request a change in valua-
tion of the stock or memberships at trial.

3. The trial court did not err in awarding the plaintiff the Maple
Lane residence at a value of zero, because although the property
was titled in the names of the parties, the actual equity in the home
had accrued solely as a result of payments made by the plaintiff's
brother and his wife, who lived in the home, and had only used the
parties to obtain financing for the purchase of the home.

4. The trial court did not err in valuing a joint bank account
awarded to the defendant at $3,000. In light of the fact that the
actual value of the bank account was a source of confusion for the
parties throughout the entire proceedings, it cannot be said that the
trial court's valuation was clearly erroneous.

5. The value assigned by the trial court to furniture at the parties' condominium, which condominium and furniture were awarded to the defendant, was clearly supported by the record. Furthermore, there is no evidence in the record supporting the defendant's argument that the trial court failed to consider the fact that the furniture was not income-producing in dividing the marital assets.

6. The trial court did not err in failing to require the plaintiff to pay all debt past due on properties awarded to the defendant because the plaintiff had made previous payments, and the debt due had already been taken into consideration when the parties agreed to values of these properties.

7. The defendant's argument that the trial court's award of spousal support was nonmodifiable and thus an abuse of discretion is not supported by the language of the judgment, and, in any event, fails because a trial court's award of spousal support may be modified under MCL 552.28.

8. Although the trial court considered all the relevant factors when it made its determination regarding the amount and duration of spousal support, and these findings of fact are supported by the record and are not clearly erroneous, the court's dispositional ruling awarding the defendant support in the amount of $200 a week for five years is not just and reasonable in light of the facts of the case. Where both parties are awarded substantial assets, the court, in evaluating a claim for spousal support, should focus on the income-earning potential of the assets, and should not evaluate a party's ability to provide self-support by including in the amount available for support the value of the assets themselves. The trial court placed inordinate weight on the value of the property awarded to the defendant, and insufficient weight on the disparate incomes of the parties and the fact that the income-earning potential of the assets awarded to the defendant was insufficient to offset this disparity. The court's dispositional ruling awarding spousal support must be reversed, and the matter remanded for redetermination of an appropriate award of spousal support.

9. The trial court abused its discretion in awarding the defendant only $5,500 in attorney fees, because it is apparent from the record that the defendant's income is insufficient to satisfy the $70,900 in fees owed, and that the defendant would have to invade the assets awarded to her in the judgment of divorce in order to pay the fees. On remand, the trial court's attorney-fee award should reflect the extent to which its award of spousal support leaves the parties with assets and income comparable to one another. The court should also determine an appropriate award of attorney fees regarding this appeal.

10. The defendant's motion to disqualify the trial judge was properly denied because the defendant failed to show any actual bias or prejudice against the defendant.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

SAWYER, J., dissenting in part, stated that he would affirm the decision of the trial court with respect to spousal support because he is not left with a firm conviction that the award of support was inequitable, and would also affirm the trial court's award of attorney fees, finding no abuse of discretion in that award.

DIVORCE — SPOUSAL SUPPORT.

A trial court, in evaluating a claim for spousal support where both parties are awarded substantial assets, should focus on the income-earning potential of the assets, and should not evaluate a party's ability to provide self-support by including in the amount available for support the value of the assets themselves.

*Gallagher Duby, PLC* (by *Byron P. Gallagher, Jr.*), for the plaintiff.

*Judith A. Curtis* for the defendant.

Before: SCHUETTE, P.J., and SAWYER and WILDER, JJ.

WILDER, J. Defendant Jeanné M. Gates appeals as of right from a judgment of divorce. We affirm in part, reverse in part, and remand.

In the judgment of divorce, the trial court divided the substantial marital estate, awarding $741,608 to plaintiff Ricky L. Gates and $395,775 to defendant. To equalize the award, the trial court ordered plaintiff to pay defendant $175,000, reducing plaintiff's award to $566,608, and increasing plaintiff's award to $570,775. The trial court also awarded defendant $200 a week in rehabilitative spousal support for a five-year period, as well as $5,500 in attorney fees.

Defendant first challenges the trial court's valuation of the marital property. In reviewing a trial court's property division in a divorce case, we must first

review the trial court's findings of fact. *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997), citing *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). "If the trial court's findings of fact are upheld, [we] must decide whether the dispositive ruling was fair and equitable in light of those facts. The dispositional ruling is discretionary and should be affirmed unless [we are] left with the firm conviction that the division was inequitable." *Id.* at 429-430, citing *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993); see also *McNamara v Horner (After Remand)*, 255 Mich App 667; 662 NW2d 436 (2003).

The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances. *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). The division need not be mathematically equal, but any significant departure from congruence must be clearly explained by the trial court. *Id.* The trial court's disposition of marital property is intimately related to its findings of fact. *Id.*

Defendant argues that the trial court's valuation of certain assets was clearly erroneous and that the trial court's dispositional ruling was inequitable. Defendant first argues that the trial court's failure to consider her financial position in awarding the martial home to her was error. However, defendant's contention is refuted by the trial court's findings of fact on the record.

In awarding the marital home to defendant, the trial court stated:

Regarding the Fairfield Drive home, I have established as best I can a value of $44,000, and I'm going to award the same to the defendant. I came up with that number based

upon both the appraisals that have been done of the property together with the potential sale that was available a year ago. I will address later in my decision some of the repairs that need to be done on the marital home to either allow the plaintiff [sic] and the boys at the present time to remain there or for her to sell it if she chooses to do so.

Our Supreme Court has held that the following factors are to be considered in the division of property, whenever relevant to the circumstances of the particular case:

(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks, supra* at 159-160.]

Our Supreme Court noted, however, that:

It is not desirable, or feasible, for us to establish a rigid framework for applying the relevant factors. The trial court is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations. But, as we have recognized before, while the division need not be equal, it must be equitable. Just as the final division may not be equal, the factors to be considered will not always be equal. Indeed, there will be many cases where some, or even most, of the factors will be irrelevant. But where any of the factors delineated in this opinion are relevant to the value of the property or to the needs of the parties, the trial court shall make specific findings of fact regarding those factors. It is hoped that this requirement will result in greater consistency and provide for more effective and meaningful appellate review. [*Id.* at 158-159 (citations omitted).]

Contrary to defendant's assertion, a review of the record indicates that the trial court considered the life status, earning abilities, and general principles of

equity when dividing the marital property, and equitably distributed the property based on those considerations. In its opinion, the trial court noted the difficulty it had in equitably dividing the property: "Finding a way for Mr. Gates to stay in business and to continuing [sic] to generate the sort of income that has supported so well the parties and their children, while giving to Mrs. Gates a fair and certain portion of the estate, already is remarkably difficult."

The trial court also found plaintiff at fault in the ultimate breakdown of the marriage, but declined to award defendant's requested sixty percent of the marital estate. As an alternative, the trial court used defendant's requested values where appropriate; required plaintiff to continue making the lease payments on defendant's vehicle; and, to account for the monies spent by plaintiff on his girlfriend, made an adjustment in the amount plaintiff was required to pay defendant to equalize the property division.

As our Supreme Court noted in *Sparks, supra* at 162, "[t]he most effective appellate review obviously would result from more thorough fact finding . . . ." However, in the instant case, the trial court articulated its findings regarding four of the relevant factors, and equitably distributed the marital property in light of all of the circumstances of the case. The trial court's findings of fact are not clearly erroneous, and we affirm its equitable distribution of the marital property.

Defendant next argues that the trial court erred in adjusting the value of Gates Ireland, Inc., because of postvaluation events, in contradiction of the parties' stipulated value. Defendant further argues that the trial court erred in refusing to adjust the value and

valuation date of stock and the Bay Harbor yacht and golf memberships. The parties stipulated that the value of Gates Ireland, Inc., was $313,500, *"assuming Acorn debt is valid."* (Emphasis added.) The parties also stipulated that the value of the Bay Harbor yacht membership was $10,000 and that the value of the Bay Harbor golf membership was $20,800.

By the time of trial, Acorn Window Systems had filed for bankruptcy, and plaintiff was uncertain whether Gates Ireland, Inc., would be able to collect the $366,000 debt. Plaintiff's one-half interest in the $366,000 debt was $183,000. Plaintiff asked the court to adjust the stipulated $313,500 value of Gates Ireland, Inc., by the $183,000 owed by Acorn, with the proviso that he and defendant would equally share any amount collected from Acorn. The trial court granted plaintiff's request and valued Gates Ireland, Inc., at $130,500 and awarded each party one half of the one-half share of the debt currently owed Gates Ireland, Inc., by Acorn.

Defendant argues that the trial court erred in adjusting the value of Gates Ireland, Inc., because of postvaluation events (Acorn's bankruptcy), in contradiction of the parties' stipulated value. This Court has held that "[s]tipulations of fact are binding, but stipulations of law are not binding." *Staff v Johnson*, 242 Mich App 521, 535; 619 NW2d 57 (2000). However, the parties' stipulation regarding the $313,500 value of Gates Ireland, Inc., specifically stated "assuming Acorn debt is valid." At the time of trial, the Acorn debt was no longer valid because of Acorn's bankruptcy. The trial court's reduction in value of Gates Ireland, Inc., was not clearly erroneous, and its dispo-

sitional ruling was fair and equitable in light of the facts of the case.

Defendant also argues that the trial court erred in refusing to permit her to adjust the value and valuation dates of stock and the Bay Harbor yacht and golf memberships. We cannot discern to which "stock" defendant is referring; therefore, we will only discuss the yacht and golf memberships. Essentially, defendant argues that because the trial court adjusted the value of Gates Ireland, Inc., as requested by plaintiff, it should also adjust the valuations of other items, as requested by her. Defendant did not request a change in valuation dates or amounts at trial. The trial court declined to adjust the valuations of the yacht and golf memberships in its July 3, 2001, opinion and order. It is well settled that decisions regarding the time of valuation of property in a divorce action are matters within the discretion of the trial court. *Burkey v Burkey (On Rehearing)*, 189 Mich App 72, 76; 471 NW2d 631 (1991), citing *Curylo v Curylo*, 104 Mich App 340, 351; 304 NW2d 575 (1981). Refusing to adjust the time of valuation of the yacht and golf memberships was well within the trial court's discretion, and was not error.

Defendant next argues that the trial court erred in awarding plaintiff the 77 Maple Lane residence at a value of zero. The parties stipulated that the value of the 77 Maple Lane property was "$0 or $58,559." At trial, plaintiff testified that the 77 Maple Lane property was titled in the parties' names, but that his brother, Toby Gates, and sister-in-law, Vicky Gates, live there. Plaintiff explained that his brother was unable to obtain financing for the house because he had filed for bankruptcy, so the parties financed the

house in their names, with his brother providing the down payment and making all mortgage payments on the house.

In its oral opinion, the trial court stated:

> The Court is going to determine that the property located at 77 Maple Lane was to some extent being held in trust by the parties here for Mr. Gates' brother Toby and his wife Vicky. I will award the property to the plaintiff but have attached no value to it as it would appear from the testimony the Court has heard, that all of the value in that property has been achieved through the payments of Toby and Vicky Gates.

Defendant argues that the trial court erred because it violated the statute of frauds, MCL 566.106, which precludes the creation of any interest in real property except by an appropriate written document, and that the trial court essentially awarded the property to a third party, which it had no authority to do. In the case defendant cites, *Smela v Smela*, 141 Mich App 602, 605; 367 NW2d 426 (1985), this Court held that "Michigan divorce statutes do not permit the courts to order conveyance of property or interests in property to third parties." In the instant case, however, the trial court did not order that the 77 Maple Lane property be conveyed to Toby and Vicky Gates. Rather, it considered the reality of the situation surrounding ownership of the house and who made payments on the house and awarded the property to plaintiff at a zero value, because the $58,559 equity in the home was achieved solely through payments made by Toby and Vicky Gates. The trial court's valuation of the 77 Maple Lane property at zero was not clearly erroneous, and its award of the property to

plaintiff was fair and equitable in light of the facts of the case.

Defendant next argues that the trial court erred in awarding the New Century joint bank account to her at a value of $3,000. Throughout the pendency of the proceedings, both parties and their attorneys were confused about the value of the bank account. At the posttrial evidentiary hearings, the parties attempted to address the bank account, but further confused the issue. The trial court declined to adjust the award of the $3,000 joint bank account to defendant in its July 3, 2001, opinion and order, stating "[d]efendant was awarded $3,000 for this account. The Court now is persuaded that the actual balance at the time of trial, as [p]laintiff testified, was a negative $11,000, which [p]laintiff subsequently reduced to $0. No adjustment will be made." In light of the confusion surrounding the value of the joint bank account, the trial court's valuation was not clearly erroneous. Moreover, the $3,000 joint bank account made up only 0.3% of the $1,137,383 total marital estate, and did not render the trial court's dispositional ruling inequitable.

Defendant next argues that the trial court erred in awarding the parties' furniture to her at a value unsupported by the record, and without consideration that the furniture was a not an income-producing asset. Plaintiff testified that the furniture in the martial home was appraised at a value of $34,275, but indicated that several items, totaling approximately $6,000, had not been included in the appraisal. Defendant accepted the values on the appraisal, with the exception of the dryer, refrigerator, and treadmill. The trial court determined "that the furnishings with

the defendant, primarily in the marital home, are worth $40,000."

Plaintiff testified that $50,000 was spent on furniture for the Bay Harbor condominium and that the value of the parties' half-interest in the furniture was $25,000 or $25,500. Plaintiff testified that the majority of the furniture was delivered after July 1, 1999. Therefore, the furniture was less than a year old at the time of trial. Defendant testified that she and Arlene Ireland purchased the furniture for the condominium for $24,280.25 and that, therefore, the parties' one-half interest in the furniture was $12,250. The trial court found that "[t]he furnishings in the condo, or one-half of the value of those, the Court would determine to be $25,000, and as the condo is awarded to the defendant, so will the value of the furnishings." The values assigned to the furniture awarded to defendant are clearly supported by the record, and are not clearly erroneous. The trial court awarded defendant the marital home and the Bay Harbor condominium, and thought it logical that the furniture in the residences stay at the residences, particularly where the parties jointly owned the condominium with the Irelands.

Defendant argues that the trial court erred in failing to consider the fact that the furniture awarded to her was not income-producing. However, nothing in the record indicates that the trial court did not consider the fact that the furniture awarded to defendant was not income-producing. The judgment of divorce awarded defendant $570,775, some of which included income-producing assets. Therefore, the trial court's award of furniture to defendant was fair and equitable in light of the facts of the case.

Defendant next argues that when the trial court awarded her the marital home, the Bay Harbor golf membership, and the Wildwinds property, it erred in failing to require plaintiff to pay all debt past due on these properties consistent with the temporary order entered by the trial court before the judgment of divorce. In its July 3, 2001, opinion and order, the trial court stated:

On June 2, 2000 [p]laintiff was ordered, at his cost[,] to have certain repairs made or maintenance performed at the former marital home awarded to [d]efendant or she could have such services performed and the reasonable amounts incurred would be added to the money judgment. This Court determines that [p]laintiff either completed the required work or took the necessary and reasonable steps to do so. To the extent necessary to negotiate a check which recently was revealed as having been sent to settle an insurance claim for some of the work or consequential damages, [p]laintiff shall sign and relinquish all claims to the check.

The trial court's determination that "plaintiff either completed the required work or took the necessary and reasonable steps to do so" is supported by the record, and is not clearly erroneous.

Defendant next argues that the trial court erred in failing to order plaintiff to pay $26,067 due on the Bay Harbor golf membership, comprised of approximately $22,500 in principal and interest payments, and $3,590 in club dues, due before June 2, 2000. After a review of the entire record, it cannot be said that the trial court's determination that plaintiff is not responsible for the amount owing on the golf membership is clearly erroneous. The trial court recognized how the parties came to agree on the stipulated value of the

golf membership and did not believe that an adjustment was necessary.

Defendant next argues that the trial court erred in failing to order plaintiff to pay $28,537 due on the Wildwinds lot owned with Mr. Spangler. After a review of the entire record, it cannot be said that the trial court's determination that plaintiff is not responsible for the amount owing on the 4660 Wildwinds property is clearly erroneous. The trial court recognized defendant's ten percent ownership interest and referenced defendant's testimony that she requested the property and could "get along" with Spangler. The trial court did not err in determining that any expenses associated with the property are defendant's responsibility.

After a review of the entire record, it is clear that the trial court's valuation of particular marital assets was not clearly erroneous. The trial court's property division was fair and equitable in light of the facts of the case, and we affirm.

Defendant next argues that the trial court erred by awarding her only rehabilitative spousal support in the amount of $200 a week for five years. Whether to award spousal support is in the trial court's discretion, and we review the trial court's award for an abuse of discretion. *Korth v Korth*, 256 Mich App 286; 662 NW2d 111 (2003); *Magee v Magee*, 218 Mich App 158, 161-162; 553 NW2d 363 (1996). On appeal, we review the trial court's findings of fact concerning spousal support for clear error. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). The findings are presumptively correct, and the burden is on the appellant to show clear error. *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990). A finding is

clearly erroneous if we are left with a definite and firm conviction that a mistake has been made. *Beason, supra* at 804-805; *Moore, supra* at 654-655. "If the trial court's findings are not clearly erroneous, [we] must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Moore, supra* at 655. The trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable. *Korth, supra* at 288, citing *Sparks, supra* at 152.

Defendant first argues, on the basis of this Court's decision in *Staple v Staple*, 241 Mich App 562; 616 NW2d 219 (2000), that the trial court's award of rehabilitative spousal support to her was nonmodifiable and that the order therefore was an abuse of discretion. We agree that it is clear, both from the trial court's opinion dated June 2, 2000, and the judgment of divorce, that the trial court intended to limit the duration of its award of rehabilitative spousal support to five years. However, we disagree with defendant's assertion that this limitation of the award of spousal support renders the award nonmodifiable. In *Staple, supra* at 569, this Court made it clear that "MCL 552.28 . . . will always apply to any alimony arrangement adjudicated by the trial court when the parties are unable to reach their own agreement."

Thus, under both *Staple, supra,* and MCL 552.28, because the spousal-support provision of the divorce judgment resulted from the trial court's disposition rather than agreement of the parties, the judgment may not be interpreted to preclude defendant from seeking to continue spousal support, or, in other words, modify the spousal support award, at the end of the five-year rehabilitative period established by

the trial court. Additionally, the precise language of the divorce judgment does not specify that spousal support will forever cease at the end of five years,[1] but instead only states that the rehabilitative *amount* established by the trial court, based on the evidence at trial, will end after five years. The trial court reaffirmed this approach in its order dated July 3, 2001. Accordingly, we reject defendant's contention that the spousal support awarded by the trial court was nonmodifiable.

Defendant next claims that even if the trial court's award of rehabilitative spousal support is modifiable, the five-year limitation on the award inappropriately shifts from plaintiff to defendant the burden of proving whether spousal support should continue beyond the five-year period. We disagree. The modification of an award of spousal support must be based on new facts or changed circumstances arising after the judgment of divorce. *Moore, supra* at 654. The party moving for modification has the burden of showing such new facts or changed circumstances. *Ackerman v Ackerman*, 197 Mich App 300, 302; 495 NW2d 173 (1992).

Nothing in MCL 552.28 supports defendant's contention that there is a statutory burden of proof imposed that, in effect, requires the trial court to

---

[1] The judgment does provide that the award of "rehabilitative support *shall* cease upon the remarriage of the defendant or the defendant's death." (Emphasis added.) Termination of spousal support on remarriage is, of course, expressly permitted by MCL 552.13, and defendant has not challenged this provision. Additionally, defendant has not claimed that the trial court's order that spousal support would terminate upon her death is contrary to the trial court's equitable authority under MCL 552.23 or that this provision renders the award of spousal support nonmodifiable contrary to the requirements of MCL 552.28.

make a permanent spousal-support award that cannot be modified unless the payer establishes the basis for modification. Defendant also cites no case law to support this claim. Accordingly, we reaffirm the principle that either party may seek a modification of an award of spousal support at any time, and that the party seeking the modification, whether upward or downward, bears the burden of proving the justification for the modified award. See *Ackerman, supra* at 302. Applying this principle to the instant case, we conclude that at the end of the five-year rehabilitative period, defendant may request that the trial court modify the spousal-support award to an amount justified by facts and circumstances that exist at the time of the request, but that were not, and could not have been, before the trial court at the time the original judgment was entered.

Defendant next argues that the amount of rehabilitative spousal support awarded by the trial court, $200 a week for five years, was not based on the required factors, and therefore is inequitable. The plain language of MCL 552.13 permits a trial court to award spousal support that it determines to be "just and reasonable." Factors to be considered by the trial court in determining whether an award of spousal support is just and reasonable include:

(1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the health of the parties, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, and (12) general

principles of equity. [*Thames v Thames*, 191 Mich App 299, 308; 477 NW2d 496 (1991).]

The trial court's June 2, 2000, opinion reflects that it considered all the relevant factors when it made its determination regarding the amount and duration of spousal support. Further, the trial court's findings of fact are supported in the record and, therefore, are not clearly erroneous. *Id.*

However, the trial court's dispositional ruling, awarding defendant rehabilitative spousal support in the amount of $200 a week for a period of five years, cannot be considered just and reasonable in light of the facts of the case. It is well settled that spousal support is intended "to balance the incomes and needs of the parties" so that neither party will be impoverished as a result of the divorce. *Korth, supra* at 289, citing *Moore, supra* at 654. "[W]here both parties are awarded substantial assets, the court, in evaluating a claim for [spousal support], should focus on the income-earning potential of the assets and should not evaluate a party's ability to provide self-support by including in the amount available for support the value of the assets themselves." *Hanaway v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995).

While divorce proceedings were pending, the trial court awarded defendant $200 a week in interim spousal support and also ordered plaintiff to make payments of $7,355 a month to reduce the debt on the parties' real property and bank notes. The judgment of divorce awarded plaintiff marital property and assets valued at $566,608, and awarded defendant marital property and assets with a value of $570,775. Plaintiff was not required by the judgment of divorce,

however, to continue debt-reduction payments on properties awarded to defendant, despite the evidence that plaintiff's gross annual income was at least three times that of defendant's gross income, and that three of the properties awarded to defendant required monthly debt-reduction payments totaling $6,400. Furthermore, while the properties awarded to defendant have income-earning potential, the income produced by these properties is insufficient to offset the monthly debt obligations of the awarded properties.

We conclude from these facts that the $200 a week award of spousal support was unreasonable, and that in fashioning its spousal support award, the trial court placed inordinate weight on the value of property awarded to defendant, and insufficient weight on the disparate incomes of the parties and the fact that the income-earning potential of the assets awarded to defendant was insufficient to offset this disparity. As in *Hanaway*, we find that "[g]iven the length of the marriage, the magnitude of the marital estate, and [plaintiff's] capital position and earning potential after the divorce, [defendant] should not be expected to consume her capital to support herself." *Id.*

The trial court's award of rehabilitative spousal support for a period of five years was modifiable and within its discretion, in accordance with MCL 522.28. However, the trial court's dispositional ruling awarding defendant spousal support of $200 a week during the five-year rehabilitative period is inequitable in light of the facts of the case. We remand for a determination of an increased amount of spousal support.

Defendant next argues that the trial court erred in awarding only $5,500 of the $70,900 in attorney and appraisal fees she requested. We review a trial court's

decision to award attorney fees for an abuse of discretion. *Stoudemire v Stoudemire*, 248 Mich App 325, 344; 639 NW2d 274 (2001). An abuse of discretion occurs only where the result " 'is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.' " *Fletcher v Fletcher*, 447 Mich 871, 879-880; 526 NW2d 889 (1994), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).

We conclude that, considering the judgment as a whole, the trial court's award of only $5,500 in attorney fees out of the $70,900 in fees and costs requested by defendant was an abuse of discretion and that remand is appropriate. Attorney fees in a divorce action are awarded only as necessary to enable a party to prosecute or defend a suit. *Stoudemire, supra* at 344. It is well settled that a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support. *Maake v Maake*, 200 Mich App 184, 189; 503 NW2d 664 (1993).

As we noted above, the amount of spousal support awarded to defendant by the trial court is inadequate. It is also apparent from the record that even accounting for the spousal support award of $200 a week, defendant's income is insufficient to satisfy her considerable debt of attorney fees and costs, and that she would be required to invade the assets awarded her in the judgment of divorce in order to pay those fees.

Because plaintiff enjoyed a comparatively substantial income advantage following the judgment of divorce, we conclude that the trial court erred by

making an award of attorney fees that requires defendant to invade her assets. On remand, the trial court's award of attorney fees should reflect the extent to which its award of spousal support leaves the parties with assets and income comparable to one another. *Ackerman, supra* at 302; *Hanaway, supra* at 299.

Defendant also argues that we should remand this case for a determination of her appellate fees and costs to be paid by plaintiff, or order a specific amount of appellate attorney fees. *Wiley v Wiley*, 214 Mich App 614, 616; 543 NW2d 64 (1995). MCR 3.206(C)(1) provides that "a party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action." MCR 3.206(C)(2) provides that "a party who requests attorney fees and expenses must allege facts sufficient to show that the party is unable to bear the expense of the action, and that the other party is able to pay." Defendant is unable to bear the expense of this action on appeal for the same reasons we have determined that the award of spousal support and attorney fees by the trial court is inadequate. Therefore, on remand the trial court shall also determine an appropriate award of attorney fees for this appeal.

Defendant next argues that the trial judge should be disqualified. When reviewing a motion to disqualify a judge, we review the trial court's findings of fact for an abuse of discretion; however, the applicability of the facts to relevant law is reviewed de novo. *Armstrong v Ypsilanti Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001). See also *Cain v Dep't of Corrections*, 451 Mich 470, 503 n 38; 548 NW2d 210 (1996).

Disqualification of the trial judge is not warranted. Our Supreme Court has held that "[i]n order for disqualification pursuant to MCR 2.003(B)(1) to be proper, the judge must have shown actual bias against a party or a party's attorney." *Cain, supra* at 512 (emphasis deleted). In addition, " '[a]s a general rule, a trial judge is not disqualified absent a showing of actual bias or prejudice.' " *Armstrong, supra* at 597, quoting *People v Houston*, 179 Mich App 753, 756; 446 NW2d 543 (1989).

In the instant case, defendant appears to argue that the record demonstrates actual bias by the trial court because the trial court declined to disqualify itself as requested by defendant's motion to disqualify, and later held the defendant in contempt for failure to comply with an order of the court. We disagree. "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a ' "deep-seated favoritism or antagonism that would make fair judgment impossible" ' and overcomes a heavy presumption of judicial impartiality." *Armstrong, supra* at 597, quoting *Cain, supra* at 496, quoting *Liteky v United States*, 510 US 540, 555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). No such showing of deep-seated favoritism or bias has been made here.

Defendant also contends that because plaintiff's firm, Gates Ireland, Inc., had been awarded a contract to renovate the Branch County Courthouse, an "appearance of impropriety" exists, warranting the trial court's disqualification. Our Supreme Court has acknowledged that "there may be situations in which the appearance of impropriety on the part of a judge . . . is so strong as to rise to the level of a due process

violation," *Cain, supra* at 512-513 n 48, and that a showing of actual bias is not necessary where " 'experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' " *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975), quoting *Withrow v Larkin*, 421 US 35, 47; 95 S Ct 1456; 43 L Ed 2d 712 (1975). Situations that pose such a risk include

> where the judge or decisionmaker
>
> (1) has a pecuniary interest in the outcome;
> (2) "has been the target of personal abuse or criticism from the party before him";
> (3) is "enmeshed in [other] matters involving petitioner . . ."; or
> (4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker. [*Crampton, supra* at 351, quoting *Withrow, supra* at 47 n 15 and *Johnson v Mississippi*, 403 US 212, 215; 91 S Ct 1778; 29 L Ed 2d 423 (1971).]

None of the four exceptions to the actual-bias requirement is present in the instant case, and, accordingly, there is no appearance of impropriety warranting reversal of the trial court's order denying defendant's motion to disqualify.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

SCHUETTE, P.J., concurred.

SAWYER, J. (*concurring in part and dissenting in part*). I respectfully dissent from that portion of the majority's decision that would reverse the trial court on the issues of alimony and attorney fees. As the

majority acknowledged, we review the alimony award to determine if it is fair and equitable in light of the facts of the case and we should not reverse unless we are left with a firm conviction that the award is inequitable. See *Sparks v Sparks*, 440 Mich 141, 152; 485 NW2d 893 (1992). I am satisfied that the trial court properly handled this issue and I am not left with a firm conviction that the award is inequitable.

As for the award of attorney fees, we review the trial court's decision for an abuse of discretion. *Kosch v Kosch*, 233 Mich App 346, 354; 592 NW2d 434 (1999). To be an abuse of discretion, "the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959). The trial court's decision here was not palpably and grossly violative of fact and logic, it was not a perversity of will, it was not the defiance of judgment and it most certainly was not the exercise of passion or bias. Accordingly, I would affirm the trial court on this issue.

For the above reasons, I would affirm the trial court on all issues.