# STATE OF MICHIGAN

# COURT OF APPEALS

KARA LEANN YOUNGBLOOD,

Plaintiff-Appellee,

v

ANDREW JOSEPH YOUNGBLOOD,

Defendant-Appellant.

UNPUBLISHED
December 28, 2017

No. 335227
Berrien Circuit Court
LC No. 15-003453-DM

Before: HOEKSTRA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals the trial court's judgment of divorce, claiming that the trial court's factual findings were erroneous, that the property division is inequitable, and the trial court's refusal to strike a confidential document from plaintiff's pleadings constitutes an abuse of discretion. We reverse in part and remand for further proceedings.

The parties married in 1995 and had three children. Plaintiff first filed for divorce in 2009. At that time, defendant began living with his parents while plaintiff remained in the parties' former marital home with the children. While the initial divorce action was pending, plaintiff's father became ill and was hospitalized. During that time, defendant approached plaintiff about reconciling. Plaintiff's father died in February 2010 and in March 2010, plaintiff dismissed the initial divorce action.

Plaintiff's father left plaintiff and her two siblings, jointly, a piece of property in Sodus (the Sodus property) which is the subject of this dispute. The property consisted of an uninhabited residence, a pole barn, and several buildings in various states of disrepair, and approximately 40 acres of land. Plaintiff negotiated with her siblings for their interests in the inherited property. In exchange for her sister's interest, plaintiff agreed to pay her sister $36,666.66. Plaintiff financed this buyout with a loan from defendant's parents on which she was the sole borrower. Payments were made on this loan while the parties were still married. Plaintiff's brother had the final one-third interest, which he transferred to plaintiff in exchange

-1-

for defendant's aging Chrysler minivan.[1]  After the negotiations with plaintiff's siblings were completed, the full title to the Sodus property was transferred to plaintiff in 2012.

The parties sold their former marital home in late 2012, from which they netted about $56,000.  They used some of the proceeds from the sale to make improvements to the farmhouse and the rest was used for household maintenance during the renovations.  While the farmhouse was being renovated, they lived in the pole barn on the property.  Both parties also contributed earnings to the renovation project.  The renovations were completed in 2014, and the family moved into the farmhouse.  The parties disagreed about how much work they did on the renovation, but both acknowledged that defendant did the bulk of the work, plaintiff and the children assisted to some degree, and some work was performed by third parties.

About one year after moving into the renovated farmhouse, plaintiff refiled for divorce. The parties settled many of the issues but went to trial regarding defendant's entitlement, if any, to the property that plaintiff and her siblings inherited.  The trial court made findings regarding the value of the property, both the land and the residence, and its appreciation and neither party challenge those findings.  The trial court concluded that the Sodus property was not marital property and that it was plaintiff's separate property.  And while it concluded that the active appreciation of the property during the marriage was martial property, it only considered 65% of the active appreciation for purposes of division.

Defendant argues that the trial court's conclusions were clearly erroneous and that the Sodus property is marital property.  We agree in part.[2]

A "trial court's first consideration when dividing property in divorce proceedings is the determination of marital and separate assets." *Reeves v Reeves*, 226 Mich App 490; 493-494; 575 NW2d 1 (1997).  "The categorization of property as marital or separate, however, is not always easily achieved," in part because "there are occasions when property earned or acquired during the marriage may be deemed separate property." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010).  The fact that an asset is obtained as a separate asset does not mean its status cannot change.  "[S]eparate assets may lose their character as separate property and transform into marital property if they are commingled with marital assets and 'treated by the parties as marital property.' " *Cunningham*, 289 Mich App at 201 (citation

---

[1] The parties disagree as to whether the transfer from her brother should be categorized as a gift or as a sale.  Regardless, the parties agree that they gave the brother a Town and Country Chrysler minivan in exchange for his share of the property.  The minivan had over 150,000 miles on it, was in defendant's name, and was used primarily by plaintiff to transport the parties' children.

[2] "In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property." *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014).  "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. at 555 (quotation marks and citation omitted).

omitted). This principle applies to inherited property. "[P]roperty received by a married person as an inheritance, but kept separate from marital property, is deemed to be separate property not subject to distribution." *Dart v Dart*, 460 Mich 573, 584-585; 597 NW2d 82 (1999) (emphasis added). "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Cunningham*, 289 Mich App at 201-202. Ultimately, "[t]he actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Id*. at 209 (emphasis added).

We conclude that the trial court erred in concluding that the two-thirds share of the Sodus property obtained from plaintiff's siblings is plaintiff's separate property. Plaintiff inherited a one-third interest in the property. The other two-thirds, though part of her father's estate, was not bequeathed to her but to her siblings, and each of those shares were obtained during the marriage.

Plaintiff points out that she paid $36,666.66 for her sister's share, and a promissory note[3] was executed, which bore only plaintiff's name as the debtor. The balance on the loan at the time of trial was $30,000. According to plaintiff, $1,000 was paid from her student loan using her student loan money. At least some of the money used to make the rest of the loan payments came from the proceeds of the former marital home, and several payments were made at times that plaintiff was not working. Aside from plaintiff's student loan money used for part of the payment, there is no documentary evidence that the remaining funds used to make payments were separate property. Thus, the evidence demonstrated that plaintiff paid at least some of the debt using marital funds. *Woodington v Shokoohi*, 288 Mich App 352, 364; 792 NW2d 63 (2010) ("Generally, assets earned by a spouse during the marriage, whether they are received during the existence of the marriage or after the judgment of divorce, are properly considered part of the marital estate.").

The one-third interest in the property formerly owned by plaintiff's brother is also marital property. The parties testified that they agreed to give plaintiff's brother a minivan, titled in defendant's name but clearly marital property, in exchange for his "gifting" his share of the property.[4] The parties both testified that they jointly participated in and agreed to the transaction before the transfer was made. Plaintiff testified that she was unsure of the value of the minivan, but that she thought it was about $4,000 and so, the trial court erred in assigning no value to the minivan.

Although plaintiff testified that she refused defendant's request to add his name to the title in 2013 and the title to the property remained in plaintiff's name alone, it is not dispositive of whether the property is her separate property. *Cunningham*, 289 Mich App at 201-202. Rather, we look to the parties' actions and conduct. *Id*. at 209. The home on the property was

---

[3] Plaintiff borrowed the money from defendant's parents.

[4] Defendant testified that plaintiff agreed to let her brother have a motorcycle, belonging to plaintiff's father, as to which plaintiff and her brother had an interest.

completely rehabilitated, improved, and updated using funds from the sale of the prior marital home. Further, defendant did the lion's share of the work himself and received no payment.[5] Plaintiff testified that when she undertook the buyout from her siblings and the subsequent renovations, her intention for the property was that it "was going to be our family home. And that it would be something that I passed along to our three sons."

In sum we conclude that the two-thirds interest obtained from plaintiff's siblings was marital property and that the $36,666.66 loan was a marital debt.

We reach a different conclusion, however, as to the one-third interest in the property inherited by plaintiff from her father. Despite the comingling described above, we are not left with a definite and firm conviction that the trial court was mistaken in finding that this property, directly inherited, should be classified as separate, particularly given the relatively brief time that that the parties lived together following the renovation.[6]

The trial court was also correct in stating that all active appreciation in the Sodus property was marital property. However, it did not apply that conclusion when determining the value of the appreciation. Rather than including 100% of the appreciation in defining the total value of the marital property, the court considered only 65% of the appreciation based on its conclusion that defendant did 65% of the work on the house. This was improper. One hundred percent is marital property regardless of who did what work and whether the underlying property is marital or separate. *McNamara v Horner*, 249 Mich App 177, 184; 642 NW2d 385 (2002) (holding that the appreciation of separate property is included in the marital estate if both parties contribute to the gain in value).

---

[5] There was disputed testimony as to whether defendant's name was going to be added to the title. Defendant testified that during the renovations, plaintiff assured him on several occasions that she would put his name on the deed. In her testimony, plaintiff admitted that she told defendant that she would add his name to the deed "at one point [and] it was [her] desire to reach a place in the relationship that [she] felt that could be done."

[6] Plaintiff argues that the parties entered into a postnuptial agreement that defendant would not receive any of her inheritance in the event of divorce. However, plaintiff did not inherit the entire property from her father; her inheritance consists of only one-third of the property. While the trial court found that there was no postnuptial agreement, the question whether an agreement existed is moot because any such agreement would apply only to plaintiff's one-third share which we agree was separate property. Therefore the analysis is limited only to the one-third of the property inherited by plaintiff. For the same reason, we conclude that defendant's argument regarding admission of e-mails between the two attorneys is also moot. "[T]his Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before" it. *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), abrogated on other grounds by *Herald Co, Inc v East Mich Univ Bd of Regents*, 475 Mich 463; 719 NW2d 19 (2006).

Defendant also challenges the trial court's ruling as to when plaintiff is to pay defendant for his share of the marital property. The trial court stated that the amount shall be paid to defendant[7] upon the first of these events to occur:

          1. Sale of the property

          2. The youngest child's graduation from high school or reaching the age of 18, whichever comes later; [8]

          3. Plaintiff's cohabitation with a romantic partner; or

          4. Plaintiff's remarriage.

Defendant argues that the trial court's decision to postpone payment of $25,000 until the happening of one of these events is an inequitable division of property. We agree.

The objective of distributing marital assets "is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). To reach an equitable division of the marital property, the trial court should consider:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. . . . [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

The trial court has "wide discretion in adjusting the property rights of the parties to a divorce." *Kendall v Kendall*, 106 Mich App 240, 244; 307 NW2d 457 (1981). "The test to be applied on appeal is whether the division of property is fair and equitable under all the circumstances." *Id*. The ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable." *Sparks*, 440 Mich at 151-152.

The trial court did not refer to the *Sparks* factors, the needs of the parties or otherwise state its reasons for requiring such a substantial delay in payment. We conclude that ordering this delay, without an articulated basis, was an abuse of discretion. At time of the divorce, plaintiff had obtained her master's degree in clinical health counselling and was working part time as a counselor for two institutions, making $18.60 per hour at one and $25 per hour at the other. Plaintiff testified that she had increased the number of the hours she works before the dissolution of the marriage, and that she intended to increase it after the divorce was finalized. Defendant is a licensed builder and had previously worked as an engineer before he lost his job

---

[7] The court gave defendant a judicial lien on the property to be discharged upon satisfaction of the judgment.

[8] At the time judgment of divorce was entered, the parties' youngest child was 12 years old.

in 2013. He testified that he had been residing with his parents since the parties' separation and did not have the resources to either purchase or rent his own dwelling. Whether these assertions are in fact true, and whether there are other factors relevant to the parties' needs, should be determined by the trial court on remand as part of a *Sparks* analysis. When dividing property, the trial court must make specific findings of fact regarding factors relevant to "the needs of the parties," *Sparks*, 440 Mich at 159.

We reverse the trial court's decision that the entire Sodus property is plaintiff's separate property. On remand, the trial court should consider two-thirds of the Sodus property as a marital asset and one-third as separate property. The loan obtained to purchase the one-third interest from defendant's sister shall be considered a marital debt. The full amount of the active appreciation of the Sodus property during the marriage is a marital asset. On remand, the court should conduct a *Sparks* analysis to determine an equitable division of the marital assets and debts. We also vacate the court's order regarding the conditions and timing of payment which should also be based upon the court's findings pursuant to the *Sparks* analysis.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro