*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDRE ZANAHIN OULAI,

        Plaintiff-Appellee,

v

ANNE-MARIE GUIDY-OULAI,

        Defendant-Appellant.

UNPUBLISHED
February 2, 2023

Nos. 356644; 358385
Kalamazoo Circuit Court
LC No. 2016-006940-DO

Before: SHAPIRO, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals by delayed leave granted the trial court's Order Regarding Spousal Support, challenging the trial court's reduction of the award of spousal support on reconsideration. Defendant appeals as of right the same order of the trial court denying her request for attorney fees. We vacate the trial court's order and remand for proceedings consistent with this opinion.

## I. FACTS

The parties married in 1995, and have one adult son. Plaintiff is an orthopedic surgeon who currently earns an annual salary of approximately $589,000. Defendant has a doctorate in information systems and teaches at Western Michigan University, earning approximately $83,000 annually. The parties are both in their early 60s. During the marriage, the family's home was in Kalamazoo, but at times during the marriage plaintiff worked in different locations, while defendant stayed in the marital home in Kalamazoo with their son.

In 2016, plaintiff filed for divorce. During the course of mediation, plaintiff—who had previously been earning $650,000 annually—indicated that he was no longer employed. The

---

[1] *Oulai v Guidy-Oulai*, unpublished order of the Court of Appeals, entered January 20, 2022 (Docket No. 358385).

parties signed a settlement agreement in November 2017. Under the settlement agreement, defendant received the marital home in Kalamazoo and a BMW; plaintiff received a house and additional real property in the Ivory Coast, and several vehicles, including a Hummer, Porsche, Dodge Charger, BMW, and a Slingshot motorcycle. The parties divided several bank accounts, retirement accounts, and life insurance.[2] The parties' debt included several credit cards, plaintiff's student loans, an "Advia Signature Loan," two judgments, college expenses for the parties' son, and taxes owed to the IRS for several years. Plaintiff received $224,683 in total assets and defendant received $251,663, while plaintiff assumed $298,085 in debt and defendant assumed $180,667 in debt. The settlement agreement forever barred spousal support for plaintiff while reserving the issue of spousal support for defendant, pending plaintiff's reemployment. In February 2018, the trial court entered a divorce judgment incorporating the terms of the settlement agreement. The divorce judgment reserved the issue of spousal support pending plaintiff's reemployment, and required plaintiff to notify defendant when he obtained employment.

In November 2019, defendant moved to enforce the divorce judgment and for spousal support, asserting that plaintiff obtained employment in September 2018 and as of June 2019 was earning an annual salary of $589,503. Defendant also sought approximately $5,000 in attorney fees under MCR 3.206(D)(2)(a) and (b), contending that plaintiff failed to disclose this information to her and that she learned about it by hiring a private investigator and incurring attorney fees to subpoena plaintiff to obtain information about his employment.

At the evidentiary hearing, plaintiff testified that the parties' marriage effectively ended years before he filed for divorce because defendant refused to join him when he moved for a job. Plaintiff testified that he thereafter began having affairs with other women, though he continued to regularly return to the marital home in Kalamazoo, and defendant and the parties' son regularly visited plaintiff. Plaintiff also testified that during the latter part of the marriage he did not fully share his salary with defendant and instead paid only certain household expenses, such as the mortgage and utilities, and maintained that he therefore should not be required to share his salary with defendant upon divorce.

In contrast, defendant described a 23-year marriage during which she cared for the parties' son and, at times, put her own career "on hold" for the marriage. For many years, defendant was a stay-at-home mother, and the family moved several times for plaintiff's work. Later, defendant earned her Ph.D., and in 2010, she began teaching full time at Western Michigan University. Defendant denied that the couple's marriage was "over" before the divorce, and testified that she and plaintiff continued as husband and wife until the divorce, even during those times when plaintiff worked in locations other than Kalamazoo, and that plaintiff paid all expenses during the marriage. The parties submitted budgets, with plaintiff claiming monthly expenses of $14,564 compared to defendant's monthly expenses of $11,447.

Following the hearing, the trial court addressed the spousal support factors and concluded that spousal support was warranted for defendant. The trial court awarded defendant spousal

---

[2] The bank accounts totaled less than $60,000, and the retirement accounts totaled less than $55,000.

support of $6,000 per month for seven years, but denied defendant's request for attorney fees. Plaintiff moved for reconsideration of the spousal support award. On reconsideration, the trial court concluded that it erred in its evaluation of the spousal support factors, specifically with regard to Factor 4 and Factor 10, and reduced the amount of spousal support to $2,000 per month for six years. Defendant now appeals.

## II. DISCUSSION

### A. SPOUSAL SUPPORT

In Docket No. 358385, defendant contends that the trial court erred by, upon reconsideration, reducing the spousal support award from $6,000 per month for seven years to $2,000 per month for six years. Defendant argues that the reduced award is inequitable because it fails to account for the significant disparity in the parties' incomes and the nonliquid nature of the assets she received, and thus unfairly allows only plaintiff to live a lavish lifestyle. Defendant argues that the trial court failed to properly consider the interdependence of the property award and spousal support under the settlement agreement.

We review a trial court's spousal support award for an abuse of discretion, which occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Loutts v Loutts*, 298 Mich App 21, 25-26; 826 NW2d 152 (2012). We review for clear error the trial court's findings of fact relating to an award of spousal support. *Id*. at 26. A finding is clearly erroneous if upon review of the record we are left with a definite and firm belief that the trial court made a mistake. *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019). If the trial court's findings are not clearly erroneous, we determine whether the dispositional ruling was fair and equitable in light of the facts. *Smith v Smith*, 328 Mich App 279, 286; 936 NW2d 716 (2019). A trial court's ruling must be affirmed unless we are convinced that it was inequitable. *Loutts*, 298 Mich App at 26. We also review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019).

Spousal support is governed by MCL 552.23(1), which provides for a case-by-case analysis. *Loutts*, 298 Mich App at 29. The decision to award spousal support is within the trial court's discretion and should reflect what is just and reasonable under the circumstances of that specific case. *Id*. at 30. "The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished." *Id*. at 26 (quotation marks and citation omitted). Although spousal support is not determined by a strict formula, *id*. at 30, factors to be considered include:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on

a party's financial status, and (14) general principles of equity. [*Id*. at 31 (quotation marks and citation omitted).]

In this case, following the evidentiary hearing the trial court provided a well-reasoned discussion of these factors and awarded defendant spousal support of $6,000 per month for seven years. The trial court observed that the marriage spanned almost 23 years and rejected plaintiff's contention that the marriage functionally ended before the parties' divorce. The trial court recognized both parties' contributions to the marriage, including defendant's primary responsibility for raising the parties' child, that both parties are in their early 60s with no significant health problems, that both parties work, that plaintiff earns $589,000 each year compared to defendant's $83,000 annual salary, and that both contributed to the marital estate. The trial court noted that the parties' asset distribution in the property settlement was essentially equal, but that defendant was "low on liquidity," while in comparison, plaintiff had an annual salary of $589,000. The trial court also observed that the parties had been able to afford a lavish lifestyle and that both parties were accustomed to that lifestyle. Despite plaintiff's repeated infidelity, the trial court did not ascribe fault to either party in the breakdown of the marriage, but rejected plaintiff's assertion that defendant did not merit spousal support. Analyzing all the circumstances, the trial court awarded defendant $6,000 each month for seven years, noting that the award was only 14 percent of plaintiff's take-home pay and that seven years was less than one-third of the duration of the marriage.

Upon reconsideration, however, the trial court found palpable error in its conclusions regarding Factor 4 (the source and amount of property awarded to the parties) and Factor 10 (the prior standard of living of the parties). Regarding Factor 4, the trial court determined that its previous conclusion—that the property division had been roughly equal—was incorrect considering the parties' debt. The trial court determined that defendant received approximately $70,000 in net assets while plaintiff's net portion was a negative share of approximately $70,000 in debt, with the result that defendant essentially received approximately $140,000 more than plaintiff from the marital estate. Regarding Factor 10, the trial court reevaluated the parties' standard of living and concluded that for much of the marriage plaintiff did not share his substantial salary with defendant. The trial court reasoned that defendant's historical standard of living, therefore, did not include a share in plaintiff's substantial salary and reduced the amount of spousal support to $2,000 per month for six years.

Considering all the circumstances, the reduced spousal support award in this case is inequitable. Leaving the trial court's factual findings undisturbed,[3] we nevertheless conclude that when determining the spousal support, the trial court gave the distribution of debt and assets disproportionate weight, resulting in an inequitable spousal support award. See *Hanaway v Hanaway*, 208 Mich App 278, 296; 527 NW2d 792 (1995). Defendant does not have liquid assets at her disposal, and the property she received is not income-producing. The major asset she received is the marital home where she lives, she has a mortgage and home equity line of credit on the home, she earns approximately $83,000 annually, and she has debt of $180,667 arising from the marriage. In comparison, plaintiff enjoys a substantial earning capacity, with a current base

---

[3] The parties do not challenge the accuracy of the trial court's calculations.

salary of $589,000. Although defendant received more from the marital estate in the division of assets and debt, the division of assets and debt must be considered in light of the parties' earning capabilities and the other circumstances of this case. See *Magee v Magee*, 218 Mich App 158, 162-164; 553 NW2d 363 (1996).

In deciding the motion for reconsideration, the trial court failed to properly consider the parties' significantly disparate incomes and the nonliquid, non-income-producing nature of the assets awarded to defendant. See *Gates v Gates*, 256 Mich App 420, 437; 664 NW2d 231 (2003) (finding spousal support inadequate when "in fashioning its spousal support award, the trial court placed inordinate weight on the value of property awarded to defendant, and insufficient weight on the disparate incomes of the parties and the fact that the income-earning potential of the assets awarded to defendant was insufficient to offset this disparity"). Considering plaintiff's substantial annual salary compared to defendant's relatively modest annual salary, the property received by defendant is not substantial, and the debt assumed by plaintiff, although relevant, is not dispositive in this case. Plaintiff assumed more debt, but given the parties' widely disparate incomes and the nonliquid, non-income-producing nature of the assets received by defendant, the debt assumed by defendant poses a substantially greater hardship than the debt plaintiff assumed, and the assets she received are of little help in meeting her needs. Cf. *Magee*, 218 Mich App at 163-164 (concluding that marital assets which produced no income did not offset the great disparity in the parties' respective monthly incomes or eliminate the need for cash flow to meet expenses). Although defendant received a "positive" overall property award, the $70,000 property award is not sufficient to meet the current or future needs of someone nearing retirement age. Particularly given plaintiff's substantial income, defendant should not be made to invade these relatively modest assets to support herself. See *Hanaway*, 208 Mich App at 296.

In sum, defendant's property award as compared to plaintiff's assumption of debt was far from sufficient to offset the vast disparity in the parties' respective incomes.[4] See *Gates*, 256 Mich App at 437. In focusing disproportionately on the distribution of debts and assets when ruling on plaintiff's motion for reconsideration, the trial court failed to appropriately balance the incomes and needs of the parties, and the result was a spousal support award that was not just and reasonable under the circumstances. See *Magee*, 218 Mich App at 163-164.

Regarding Factor 10, the trial court on reconsideration appeared to conclude that defendant should be assigned a lesser standard of living than plaintiff because plaintiff did not fully share his substantial salary with defendant during the marriage. Plaintiff testified that toward the end of the

---

[4] A review of the numbers in this case supports that the trial court gave the debt and asset division disproportionate weight in light of the parties' widely disparate incomes and the nonliquid nature of defendant's assets. The trial court originally awarded defendant spousal support for seven years at $6,000 a month, totaling $504,000 over seven years, which is less than plaintiff earns in one year. Following plaintiff's motion for reconsideration, the trial court concluded that there was an approximately $140,000 difference in the net property awards that the parties received, and therefore reduced defendant's award of spousal support to $2,000 a month for six years, for a total of $144,000 over six years. In other words, the trial court drastically reduced defendant's spousal support by $360,000 to compensate plaintiff for the $140,000 difference in the property award.

parties' marriage he paid the mortgage and utilities on the marital home but otherwise did not share his income with defendant. Plaintiff appears to argue, and the trial court appeared to agree, that plaintiff's failure fully to share his income with his wife during the marriage means that she did not enjoy his standard of living, and that spousal support should be established in an amount to maintain their disparate standards of living going forward. We find this reasoning troubling and not in accordance with the principles of equity that govern a divorce action.

Spousal support Factor 10 considers "the prior standard of living of the parties and whether either is responsible for the support of others." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). The focus is on the parties' standard of living during the marriage, and the parties' income can be used as an indicator of the nature of this lifestyle. See *Hanaway*, 208 Mich App at 296 & n 10. The idea of a communal or marital standard of living is consistent with the basic principle that income earned by one spouse during the marriage is presumed to be marital property, see *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010), and acknowledges that marriage is akin to a partnership in which both parties contribute and both are entitled to share in the benefits of their labor. See *Hanaway*, 208 Mich App at 294. The result is a commensurate standard of living between the spouses, and it is this communal standard of living during marriage that generally should be considered when addressing spousal support. Following divorce, particularly with the added expense of separate households, there is no guarantee that parties will be able to fully maintain their previous standard of living, but any reduction in the parties' standard of living should be shared equitably. See *Loutts*, 298 Mich App at 26 ("[T]he object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished."); 27B CJS Divorce § 613 ("Permanent support may be appropriate to equalize the standard of living or equitably share the overall reduction in the parties' separate standards of living.").

We conclude that the trial court erred by ascribing to defendant a lesser standard of living during the marriage because plaintiff spent more lavishly on himself. Plaintiff does not identify authority to support the theory that defendant should be ascribed a lower standard of living than plaintiff during the marriage because plaintiff consumed more of the marital resources. Such an assertion is contrary to the duty of support that spouses owe each other during marriage, contrary to the principles of equity that govern a divorce action, and would reward a spouse who consumed the greater share of the marital resources.[5] Here, the parties' considerable incomes supported them in an affluent lifestyle during the marriage, and it is this affluent lifestyle that should be considered for purposes of Factor 10. Cf. *Hanaway*, 208 Mich App at 296 & n 10.

In sum, the reduced spousal support award in this case was not fair and equitable in light of all the circumstances. See *Loutts*, 298 Mich App at 30. The parties had a long-term marriage of 23 years, during which defendant contributed to the marital estate, and she is entitled to share

---

[5] Arguably, plaintiff's enjoyment of a more lavish lifestyle during the marriage is an equitable consideration favoring *defendant*, because plaintiff could be said to have excessively depleted the marital estate to which defendant had contributed. See *Cassidy v Cassidy*, 318 Mich App 463, 471-473; 899 NW2d 65 (2017) (affirming spousal support award when trial court considered, among other things, the husband's misuse of marital funds during the marriage).

equitably in the fruits of their labors. Defendant is in her early 60s, and although she earns a respectable salary, she is unlikely to approach plaintiff's substantial earning capacity. The assets she received are nonliquid and of little help in meeting her needs. The trial court erred in assessing defendant as having a lower standard of living because plaintiff spent more lavishly on himself during the marriage.

Although defendant asks this Court to reinstate the prior $6,000 monthly spousal support award, we conclude that the appropriate course is to remand to the trial court to determine the spousal support award in the first instance. See *Gates*, 256 Mich App at 437; *Magee*, 218 Mich App at 164. On remand, the trial court should consider all the parties' circumstances, including the parties' respective needs, the length of the marriage, their historical standard of living, the vast disparity in their incomes, and the nonliquid, nonincome-producing nature of the assets received by defendant.

## B. ATTORNEY FEES

In Docket No. 356644, defendant contends that the trial court erred by denying her request for approximately $5,000 in attorney fees under MCR 3.206(D)(2)(a) and (b). She argues that the parties' income disparity establishes that she is unable to pay the attorney fees and that plaintiff is able to pay the fees. She also argues that attorney fees are warranted because plaintiff violated the divorce judgment by failing to inform her of his employment, causing her to incur the attorney fees and expenses. We review a trial court's decision to grant or deny attorney fees in a divorce action for an abuse of discretion. *Cassidy*, 318 Mich App at 479.

In Michigan, attorney fees are not recoverable unless expressly allowed by statute, court rule, common-law exception, or contract. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825, 845 (2005). Attorney fees are not recoverable as of right in a divorce action, *id.*, but may be awarded under MCR 3.206(D), which states:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:
>
> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or
>
> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

MCR 3.206(D)(2)(a) allows payment of attorney fees based on one party's inability to pay and the other party's ability to do so. By contrast, MCR 3.206(D)(2)(b) involves consideration of "a party's bad behavior." *Cassidy*, 318 Mich App at 481. Under this provision, attorney fees and

expenses may be awarded when the fees were incurred because the other party refused to comply with a previous court order, despite having the ability to comply. MCR 3.206(D)(2)(b). When considering whether to award attorney fees on the basis that a party violated a court order, the trial court should determine whether a party violated a court order, whether this misconduct caused the other party to incur fees, and whether those fees were reasonable. See *Reed*, 265 Mich App at 165-166.

Here, the divorce judgment reserved the question of spousal support pending plaintiff's reemployment, and required plaintiff to inform defendant's attorney when he obtained employment, stating that "Plaintiff shall provide proof of employment to Defendant's counsel within 7 days of securing any position pursuant to the terms of the Settlement Agreement." In seeking attorney fees under MCR 3.206(D)(2)(b), defendant presented evidence that plaintiff failed to provide timely notice of his employment to defendant's attorney. Defendant also presented evidence that she incurred attorney fees and expenses as a result of plaintiff's violation of the divorce judgment because she had to hire a private detective and an attorney to establish plaintiff's employment.

The trial court failed to address whether plaintiff violated the divorce judgment and whether defendant should be allowed to recover the attorney fees and other expenses she incurred attempting to ascertain plaintiff's employment information. When denying defendant's request for attorney fees, the trial court reasoned that attorney fees were unwarranted because the issue of spousal support had been "reserved" in the divorce judgment and plaintiff had the "right to go to court." The trial court's point appears to be that defendant would have incurred attorney fees for the evidentiary hearing, regardless of plaintiff's conduct, because the divorce judgment provided for mediation and a hearing on spousal support. The trial court ignored, however, the salient fact that the divorce judgment required plaintiff to report his employment to defendant's attorney within seven days, meaning that—evidentiary hearing or not—defendant should not have had to incur expenses by hiring a private detective or subpoenaing plaintiff to ascertain his employment information. We therefore remand to the trial court for reconsideration of defendant's request for attorney fees under MCR 3.206(D)(2)(b). The trial court should consider whether plaintiff in fact violated the divorce judgment by failing to provide the required notice of employment and whether, as a result of that violation, defendant incurred compensable attorney fees and expenses.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michael F. Gadola
/s/ Christopher P. Yates