# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES EDWARD HUBBARD,

        Plaintiff-Appellee,

v

RACHEL MARIE HUBBARD,

        Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No. 336614
Gogebic Circuit Court
LC No. 2016-000048-DO

---

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right the judgment of divorce entered by the trial court, challenging the trial court's order regarding spousal support, property division, and attorney fees. We affirm.

## I. FACTS

The parties married in 1988 in the state of Washington, when plaintiff was 18 years old and defendant was 20 years old. At the time, plaintiff was a member of the United States Army and was stationed in Texas. Defendant was in her first year of an associate's degree program in veterinary science in Washington, but moved to Texas before beginning her second year. While in Texas, she attended school and planned to attend veterinary school. After plaintiff completed his term of service, the couple moved back to Washington where he obtained his undergraduate degree. Plaintiff then attended medical school at the University of Washington and completed his residency in Tacoma, Washington. During this time, defendant earned an undergraduate degree which was paid for by scholarship, and also worked as a veterinary technician to support the parties. Plaintiff completed his residency, and the couple ultimately moved to the area of Ironwood, Michigan in 2001, where plaintiff obtained a position at Aspirus Grand View Hospital.

After moving to the Ironwood area, the couple purchased a 4,500 square foot home on 20 acres; the home included a sauna, five bathrooms, and a full gym. Initially, defendant did not work outside the home. Defendant investigated the possibility of attending veterinary school but decided against it because the nearest school was more than four hours away. In 2004, she opened a shoe store, Superior Shoes, which she then expanded to Dallas, Texas, and Bloomington, Indiana. In 2009, Superior Shoes obtained a $400,000 loan from Wells Fargo that plaintiff cosigned. Facing continuing financial problems, Superior Shoes stopped paying on the

-1-

Wells Fargo loan in 2012, as well as on a credit card on which both parties were liable. Superior Shoes closed permanently in March 2014. Plaintiff testified that he spent nearly $500,000 to pay the debts of the business.

Plaintiff testified that after Superior Shoes closed, defendant "shut down emotionally to me" and focused on obtaining a Master's in Business Administration (MBA). Defendant testified that plaintiff had developed a chronic "night terrors" condition that caused him to violently confront defendant while sleeping, cursing at her, throwing things at her, and kicking her out of bed. Defendant testified that in the final year of the marriage, plaintiff began to swear at her and threaten her while awake. She testified to an incident in September 2014 when plaintiff "was yelling at me about the business going downhill, and he said you deserve to be hit upside the head with a two by four."

In 2014, defendant obtained a student loan and used the funds to complete her MBA. In May 2015, she accepted a position with the Veterinary Cancer Group in Los Angeles. Plaintiff testified that he believed that defendant was to spend two months in Los Angeles for orientation, and then begin working from home with regular travel to Los Angeles. Plaintiff testified that in June 2015, defendant suggested that they get divorced to protect their assets while she attempted to discharge the debts of Superior Shoes in bankruptcy. Plaintiff testified that the couple had discussed this strategy before with plans to immediately remarry, and he therefore paid $2,650 in attorney fees to begin the divorce proceeding. Several weeks later, defendant informed him that she was leaving him and moving to Los Angeles, citing the incident in September 2014.

At the time of trial, plaintiff's annual income was approximately $418,000. Plaintiff testified that he anticipated making less money in the future, estimating that his income would be $356,000 for 2016, and less in subsequent years. Defendant's annual income at the time of trial was $110,000. Defendant testified that she does not anticipate that her income will increase in the near future.

Before the trial court, defendant requested an equal distribution of the marital estate and $9,000 monthly in spousal support. She further requested that the attorney fees paid by plaintiff to his attorneys be deducted from his share of the estate, that her student loan debt and a loan from her mother for attorney fees also be considered as part of the marital estate, and that plaintiff be ordered to pay 79% of her attorney fees. The trial court found that the student loan was defendant's separate property for purposes of distributing the marital estate, and further found that defendant had failed to present proof of the terms of the loan from her mother. The trial court also declined to deduct plaintiff's attorney fees from his share of the marital estate, awarded defendant $3,500 a month in rehabilitative spousal support for a period of five years, and denied defendant's request for attorney fees. Defendant now appeals.

## II. ANALYSIS

## A. SPOUSAL SUPPORT

Defendant challenges the trial court's award of spousal support, arguing that (1) the award is inequitable because the trial court failed to consider her lifestyle, needs, and prior

standard of living when making the award, and (2) the time limit of the award prevents defendant from seeking further support in the future. We disagree.

A trial court is authorized to award spousal support under MCL 552.23(1), which provides in relevant part:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

The decision to award spousal support is within the discretion of trial court, and this court will affirm the trial court's ruling unless we are "firmly convinced that it was inequitable." *Richards v Richards*, 310 Mich App 683, 690; 874 NW2d 704 (2015). A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). When evaluating the issue of spousal support, the trial court "should make specific factual findings regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (citation omitted). We review a trial court's factual findings with respect to spousal support for clear error. *Richards*, 310 Mich App at 690. The findings of fact are "presumptively correct, and the burden is on the appellant to show clear error." *Gates v Gates*, 256 Mich App 420, 432; 664 NW2d 231 (2003). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Woodington*, 288 Mich App at 355. If the trial court's findings of fact are not clearly erroneous, we then determine whether the dispositional ruling was fair and equitable under the circumstances of that case. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).

In this case, defendant does not challenge the trial court's factual findings as erroneous, but instead argues that the award of spousal support is inequitable because the trial court failed to consider her lifestyle, needs, and prior standard of living, and therefore failed to award defendant adequate spousal support. When awarding spousal support, the objective is "to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case." *Woodington*, 288 Mich App at 356. In determining the issue of spousal support, a trial court should consider

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint

estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

The trial court is not required to evaluate every factor, only those factors relevant to the particulars of the case. See *Cassidy v Cassidy*, 318 Mich App 463, 475; 899 NW2d 65 (2017). In this case, the trial court made the following findings on the issue of spousal support:

1. Past relations and conduct of the parties. Plaintiff claimed that defendant's failed shoe business caused the marriage to end. Defendant claimed plaintiff's "night terrors" caused the marriage to end. The court finds no fault [of] significance to either party under this factor.

2. Length of marriage. The parties were married for 28 years.

3. Abilities of the parties to work. Plaintiff earned significant income of over $300,000 the last several years, although he projects decreases in the years to come. Defendant has worked for the same employer the last two years and will earn $110,000 this year. Also, defendant has an MBA and aspirations to get additional education which will only enhance her earning capacity. Each party has the ability to earn a more than adequate income, but plaintiff's earning ability will exceed that of the defendant.

4. Source and amount of property awarded to the parties. For the most part, the parties' primary assets consist of various pension plans. Each party has been awarded the same value in pension plans. Those assets will provide income in another 10 years or so. The parties have been awarded equal amounts of the marital assets.

5. The parties' ages. The Parties are in their mid-forties and close in age.

6. Abilities of the parties to pay spousal support. Plaintiff has the ability to pay spousal support even given his assertion of over $11,000 per month in marital debt payments.

7. Present situation of the parties. Since separation, both parties have self-supported themselves through their employment income. Plaintiff has assumed and paid the marital debt. Defendant has absorbed a higher cost of living in Los Angeles, CA.

8. Needs of the parties. Each party has the basic needs for food, shelter, and utilities. Neither party has any other unique or specialized needs.

9. Parties' health. Both parties are in generally good health.

10. The prior standard of living of the parties and whether either is responsible for the support of others. Neither party has any obligation to support others. Given that the parties will each be maintaining a separate household, they will

suffer a decreased standard of living. With different incomes, this will impact the defendant more than the plaintiff.

11. General principles of equity. There is no specific finding under this factor which would favor either party.

Based on the above, the court concludes that rehabilitative spousal support should be awarded. This will afford defendant the opportunity to develop job seniority, employment security, retirement income, and to pursue additional education. Retroactive to November 1, 2016, plaintiff shall pay spousal support to the defendant in the amount of $3,500 per month until September 30, 2021, i.e. 5 years of monthly spousal support.

Defendant argues that she will not be able to afford the lifestyle she had while married, and in fact will have insufficient funds to maintain her current standard of living in Los Angeles. Here, the trial court considered the parties' prior standard of living and found that, by virtue of maintaining separate households, the parties would of necessity suffer a decreased standard of living, particularly defendant whose income is lower than plaintiff's. To help alleviate this situation for defendant, the trial court awarded the not insubstantial amount of $3,500 per month for five years. The trial court noted, however, that "[d]efendant has absorbed a higher cost of living in Los Angeles, CA." This is supported by defendant's proposed budget, indicating that she would have $12,456.43 in expenses each month, including rent on her apartment in Los Angeles, $250.00 in expenses related to "haircare/personal grooming," and $1,200 for groceries and dining out.

We find no basis for reversal regarding the amount of the trial court's award of spousal support. Here, the trial court evaluated the relevant factors in light of the circumstances and awarded defendant substantial spousal support for five years. While the spousal support awarded is not, perhaps, enough to support defendant in the standard of living she prefers, the objective of spousal support is to balance the incomes and needs of the parties so that neither is impoverished. *Woodington*, 288 Mich App at 356. Specifically, the purpose of rehabilitative spousal support is to allow the recipient to establish economic self-sufficiency. *Richards*, 310 Mich App at 692. Defendant has already begun to establish economic self-sufficiency by earning her MBA and obtaining a job earning $110,000 per year. We are thus not firmly convinced that the award of spousal support in this case was inequitable. *Gates*, 256 Mich App at 433.

Defendant next contends that the trial court erred when it limited the spousal support award to five years. She argues that the five-year limitation inhibits her right to petition the trial court for modification, and that the limitation was based on speculation. MCL 552.28 provides:

On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in

trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

Our Supreme Court has opined that the proper reading of MCL 552.28 "is that the Legislature intends, in cases in which alimony is initially ordered, that the court retain the power to make necessary modifications in appropriate circumstances." *Rickner v Frederick*, 459 Mich 371, 379; 590 NW2d 288 (1999). This Court has stated that MCL 552.28 "will always apply to any alimony arrangement adjudicated by the trial court when the parties are unable to reach their own agreement." *Staple v Staple*, 241 Mich App 562, 569; 616 NW2d 219 (2000). This Court also has held that, although the trial court may have limited the duration of the award, that limitation does not make the award nonmodifiable. *Gates*, 256 Mich App at 433.

Here, the judgment of divorce specifies alimony for a period of five years, but does not preclude defendant from seeking modification of the spousal support order should her circumstances change. Accordingly, we are not firmly convinced that limiting the support award to five years was inequitable.

## B. PROPERTY DIVISION

Defendant next contends that the trial court erred in its division of the marital assets. Specifically, defendant argues that the trial court erred when it (1) excluded her student loan from the marital estate, (2) excluded a loan to defendant from her mother from the marital estate, and (3) excluded plaintiff's payment of his attorney fees from the marital estate. We disagree.

A judgment of divorce is required to include "a determination of the property rights of the parties." MCR 3.211(B)(3). When determining the property rights of the parties in a divorce proceeding, the trial court "must divide the marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). Marital property is that which accrued to the husband or wife "by reason of the marriage." MCL 552.19. This Court has stated that, as a general rule, "marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham*, 289 Mich App at 201. However, the "actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate property." *Id*. at 209.

Here, defendant does not challenge the trial court's division of the marital estate, but rather the trial court's decision to exclude certain items from the marital estate before division. We review for clear error a trial court's factual finding regarding whether a particular asset constitutes marital property. *Woodington*, 288 Mich App at 357. In general, a marital asset is included in the marital estate and is subject to property division between the parties, whereas separate property is not. *Id*. at 358. An asset earned by either spouse during the marriage is generally considered part of the marital estate. *Id*. at 364. But when apportioning the marital estate, the parties' manifestation of the intent to lead separate lives, such as maintaining separate homes, can be significant. *Id*. Property earned after the manifestation of the intent to separate should still be considered part of the marital estate, but when considering such property, "the presumption of congruence that exists with respect to the distribution of the marital assets

becomes attenuated and may result in the nonacquiring spouse being entitled to no share or a lesser share of the property in light of all the apportionment factors." *Id.*

In this case, the trial court found that defendant's student loan, obtained shortly before defendant accepted employment in Los Angeles, established housing there, and then informed plaintiff that she was divorcing him, was

> a separate debt belonging to defendant. She obtained the underlying educational degree during the twilight of the relationship. The degree never made a contribution to the marital estate. The evidence failed to show a "concerted family effort" for the degree. There was no mutual plan/decision to pursue the degree or share in its benefits.

Because the debt was incurred during the marriage, the debt generally would be included in the marital estate even though it was incurred just before defendant manifested her intent to separate from plaintiff. But even if included in the marital estate, in thereafter dividing the estate the trial court could have properly considered the proximity to the acquisition of the debt to defendant's manifesting her intent to separate from plaintiff in assigning the responsibility for the debt. The trial court thus could have properly determined, after considering the apportionment factors, that plaintiff as the "nonacquiring spouse" was not obligated to any share of that debt. See *Id.* at 364. In other words, under the circumstances of this case, had the student loan debt been included in the marital estate, it nonetheless would have been within the trial court's discretion to allocate the loan to defendant. We therefore conclude that the trial court in this case did not abuse its discretion by allocating the student loan debt to defendant without first placing it in the marital estate. We similarly conclude that the trial court did not abuse its discretion in allocating to defendant the repayment of money to defendant's mother, allegedly borrowed by defendant during the pendency of the divorce proceedings and after the parties manifested the intent to separate.

Defendant next argues that the trial court erred when it did not find that plaintiff had dissipated the marital estate by using funds from the marital estate to pay his attorney fees incurred during the divorce, and that the amount spent therefore should have been included in the marital estate as an amount received by plaintiff. "[W]hen a party has dissipated marital assets without the fault of the other spouse, the value of the dissipated assets may be included in the marital estate." *Woodington*, 288 Mich App at 368. Dissipate means to "spend or use up wastefully or foolishly." *Merriam-Webster's Collegiate Dictionary* (11th ed). Dissipation may also be defined as "[t]he use of an asset for an illegal or inequitable purpose, such as a spouse's use of community property for personal benefit when a divorce is imminent." *Black's Law Dictionary* (10th ed).

In this case, the trial court found that

> the evidence does not support defendant's contention that plaintiff dissipated the marital estate. Post separation, plaintiff continued his normal spending pattern. In fact, his payment of marital debts increased the net worth of the marital estate. Under defendant's reasoning, defendant also dissipated the marital estate by

-7-

spending her earnings. The court does not accept that premise. Neither party committed "economic waste" of the marital estate.

Here, plaintiff spent $36,000 on attorney fees while defendant spent more than $70,000. Given that plaintiff spent approximately half what defendant spent on attorney fees, defendant cannot argue that plaintiff's fees were excessive, lending credence to the argument that plaintiff did not spend the money "wastefully or foolishly." During the divorce proceedings, each party in this case had regular income from employment. Presumably, each party used their income for their own expenses during that time, including paying their respective attorneys, and in doing so, neither party can be said to have dissipated the marital assets. We therefore conclude that the trial court did not clearly err in finding that plaintiff did not dissipate the marital assets and in declining to include that amount in the marital estate.

## C. ATTORNEY FEES

Finally, defendant contends that the trial court erred when it denied her request that plaintiff pay a portion of her attorney fees. We disagree. This Court reviews a trial court's decision with respect to attorney fees for an abuse of discretion. *Gates*, 256 Mich App at 437-438. A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *Woodington*, 288 Mich App at 355.

In a divorce action, attorney fees "are awarded only as necessary to enable a party to prosecute or defend a suit . . . ." *Hanaway v Hanaway*, 208 Mich App 278, 298; 527 NW2d 792 (1995). The party requesting attorney fees in a divorce action must allege sufficient facts to show that "the party is unable to bear the expense of the action, and that the other party is able to pay. . . ." MCR 3.206(C). A trial court may also award attorney fees "when the requesting party has been forced to incur expenses as a result of the other party's unreasonable conduct in the course of litigation." *Hanaway*, 208 Mich App at 298. Further, "a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Gates*, 256 Mich App at 438.

Defendant argues that the trial court should have applied the "war chest" analysis employed in *Riemer v Johnson*, 311 Mich App 632, 639-640; 876 NW2d 279 (2015). In *Riemer*, the trial court created a "war chest" of attorney fees and expert witness costs for both parties and assigned responsibility for payment of the fees to each party based on the percentage each party contributed to their combined annual incomes. *Id*. *Riemer*, however, does not establish that the "war chest" theory should be applied in all cases. We therefore conclude that the trial court did not abuse its discretion by declining to utilize the "war chest" theory in this case.

Here, defendant earns $110,000 annually, and plaintiff earns in excess of $300,000 yearly. Plaintiff's income shows that he has the ability to pay, but given defendant's salary, she has not alleged sufficient facts to show that she is "unable to bear the expense of the action . . . ." MCR 3.206(C)(2)(a). Defendant argues that "overzealous theories" advanced by plaintiff caused her to incur additional attorney fees, but points to no specific examples of excessive zeal. She has therefore failed to allege sufficient facts to show that she was "forced to incur expenses as a result of the other party's unreasonable conduct in the course of litigation." *Hanaway*, 208 Mich App at 298. Because defendant did not demonstrate that she could not pay her own attorney fees

or that plaintiff's unreasonable conduct forced her to incur additional expenses, the trial court's decision to deny her attorney fees did not "fall outside the range of reasonable and principled outcomes." *Woodington*, 288 Mich App at 355.

Affirmed.

/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel