*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TIMOTHY KENNEY,

　　　　　Plaintiff-Appellant,

v

SUSAN THERESE JOHNSON,

　　　　　Defendant-Appellee.

UNPUBLISHED
May 30, 2024

No. 366604
Kent Circuit Court
LC No. 21-009766-DO

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right a judgment of divorce, challenging the trial court's award with regard to three pieces of real property, two that were purchased by each party separately years before the marriage—but were deeded to each other as joint tenants two years before the marriage, and one property was that was purchased during the marriage. We affirm.

## I. BACKGROUND FACTS

On October 25, 2021, plaintiff filed his complaint for divorce, stating that the parties had been married on October 24, 2014, and sought an equitable distribution of the assets and debts.

On May 11, 2022, defendant filed a settlement conference statement. Defendant explained that this was the second marriage for both parties and they had no children together. With regard to the three real properties at issue, defendant stated that she owned a home located at 106 72nd Street, in Grand Rapids, Michigan, prior to the marriage. She purchased the home in 1991 and when the parties married in 2014, the home was worth about $119,800, according to the state equalized value (SEV) doubled. When plaintiff filed for divorce, the home was worth about $198,000, so the increase in value was about $78,200. Defendant argued that plaintiff contributed little, if anything, to the maintenance or improvement of the home, as evidenced by the fact that estimates for repairs of the collapsing foundation and leaking roof totaled over $42,000. With regard to the second property, defendant argued that she purchased a home located at 152 Majestic Street, in Kentwood, Michigan, during the marriage. Defendant purchased the home in 2017 for $88,500, making a down payment of $23,000 and using her home on 72nd Street as collateral. Defendant noted that the home was purchased with the intent that her daughter would live there

and make all mortgage and other payments for the home, as well as pay for the maintenance and repairs associated with that home. And, again, plaintiff contributed little if anything to that property. With regard to the third property, defendant argued, prior to the marriage plaintiff owned a home located at 8404 West 124th Street, in Grant, Michigan. It had recently been appraised at $79,000, and $28,000 was owed on the property. Further, defendant stated, plaintiff had purchased a lot valued at about $7,200, located in Idlewild, Michigan—during their marriage but without her knowledge—and titled it in his and his daughter's names only. Defendant noted that prior to and during their marriage, she and plaintiff had verbally agreed that, if they divorced, they would each take the real property they owned prior to their marriage.

On September 14, 2022, plaintiff filed his trial brief. With regard to the real properties at issue, plaintiff explained that defendant purchased the house at 106 72nd Street, located in Grand Rapids, Michigan before their marriage. However, in 2012, plaintiff received a lawsuit settlement of $30,000 and the parties wanted to improve this property. Thus, they executed a quit claim deed from defendant to plaintiff and defendant—before they were married—and became co-owners of that property. With regard to the second house located at 8404 West 124th Street, in Grant, Michigan, plaintiff stated that he owned this property prior to their marriage. But, in 2012, the parties also executed a quit claim deed from plaintiff to defendant and plaintiff—before they were married—and became co-owners of that property. The third property, located at 152 Majestic Street, in Kentwood, Michigan, was purchased during the marriage in 2017, and was being rented to defendant's daughter. The down payment for this home was paid by a home equity loan taken against the house located on 72nd Street, and plaintiff signed to get that line of credit. Plaintiff admitted that a fourth property was purchased by him and his daughter during the marriage and it is vacant property worth about $6,000, of which plaintiff paid $3,000 and owns a one-half interest.

On September 19, 2022, defendant filed her trial brief. With regard to the real properties at issue, defendant explained that prior to the marriage, each party owned a house and, in 2012, they executed quit claim deeds to put each other on the deeds to these properties. At the time, defendant owned the house located at 106 72nd Street with no mortgage on the property. Plaintiff owned the house located at 8404 West 124th Street, and had a mortgage on that property which still remained. In 2017, defendant argued, she purchased a house at 152 Majestic Street and her daughter lived in that home. Defendant actually purchased her daughter's former boyfriend's equity in that home when the two separated and her daughter had been paying defendant for the mortgage, taxes, and insurance on the property, as well as for the home equity line of credit. Essentially, this property was held in a constructive trust for defendant's daughter, and her daughter also paid for all repairs and maintenance on the property. Defendant noted that plaintiff had purchased property during the marriage with his daughter, which is titled as a joint tenancy.

On September 26, 2022, a bench trial began with the court indicating that the main issues in dispute were the three real properties. Plaintiff was the first witness. In brief and as relevant to the issues on appeal, plaintiff testified that he and defendant were married almost eight years. With regard to the house at 106 72nd Street, defendant owned the property before she met plaintiff. In May of 2012, plaintiff received a lawsuit settlement of about $30,000 and a majority of the money was put into the 72nd Street property, but some of it was put into the property he owned at 8404 West 124th Street, including a roof that cost about $5,000 and a shed that cost about $11,000. Plaintiff recalled that cement work was done at the 72nd Street house for about $4,375 and a big window was replaced, for which he gave defendant $4,000 toward the cost of that window. They

-2-

made other improvements and the lawsuit "money was gone in no time at all." Plaintiff testified that he and defendant decided that they should be named on the deeds to each other's properties so quit claim deeds were executed to that effect. This way, plaintiff was putting money into their property and not just defendant's property. The parties quit claimed their properties to each other about two years before they got married. The 72nd Street property was appraised at $235,000 and there was no debt on the property. Plaintiff understood that the insurance company paid for the roof repair on the house on 72nd Street after he moved out. Plaintiff did not believe the crawlspace under the house on 72nd Street had any mold issues or issues of any kind and the foundation of the house was fine.

Plaintiff testified that defendant told him around March of 2021 that she wanted a divorce and presented him with some papers to that effect but they were one-sided to her benefit so he refused to sign them and retained an attorney. But after that, they interacted like normal and he did not think they would get divorced. They still did a lot of things together and were cordial. Plaintiff testified that the house at 8404 West 124th Street appraised for $79,000, and almost $28,000 was still owed on the property. Plaintiff indicated that he would like to be awarded this property and defendant could be awarded the property at 106 72nd Street. With regard to the house at 152 Majestic Street, plaintiff testified that they bought it from defendant's daughter's boyfriend in November of 2017. To get the money for the down-payment, they borrowed against the house at 106 72nd Street, opening a line of credit. That house has appraised for $205,000, and the outstanding debt on it was $65,000. Plaintiff did purchase a vacant property during the marriage and the deed has his and his daughter's names on it. He believed it had a value of about $6,000. Plaintiff would like to be awarded the vacant property and he was fine with defendant being awarded the Majestic property. After plaintiff's testimony, he rested his case.

Defendant testified next. She lives at 106 72nd Street in Grand Rapids, and had lived there since 1990. She and plaintiff got married in October 2014, but the marriage started to breakdown in September 2017 and she knew that year that she wanted a divorce. Defendant decided to divorce plaintiff in April 2020 and contacted an attorney in 2021, but plaintiff filed for divorce first in October 2021. Defendant signed the house on 72nd Street over from herself to herself and plaintiff on July 19, 2012—about two years before the parties were married—and there was no mortgage on the house so defendant owned all of the equity in the house at that time. Defendant testified about an appraisal of the 72nd Street home conducted by "Mr. Larson," and indicated that he did not inspect the crawlspace or the attic, although he noted that the crawlspace experienced seasonable dampness. Defendant referred to some photographs and indicated that they depicted significant issues with her house requiring repair. Defendant recalled that when her name was put on plaintiff's property located on 124th Street, he had a mortgage and owed about $40,000. She recalled that he added dirt to where he was planning on putting a shed and he added a roof and foundation "to go over the top of the trailer." Defendant testified that plaintiff spent the $30,000 he received from the lawsuit settlement on that roof. And he had $3,000 worth of trees cut down at that house also. Defendant thought plaintiff spent $12,000 on the shed because that is the amount he took out of her safe without her permission.

Defendant also testified about the house at 152 Majestic Street in Kentwood. She purchased that house in 2017 for $88,500. Plaintiff did not agree with her purchasing this house because she used the house at 72nd Street as collateral for the home equity loan for the down payment (which had been repaid), as well as for the mortgage to purchase this house for her

daughter Chelsea. Defendant testified that Chelsea made payments to her toward the mortgage and defendant paid the mortgage. To that date, the total amount paid to the lender was about $43,000, but about $65,000 was still owed. There were time periods during the four years where Chelsea did not pay any money to defendant. But this was not a rental property. And Chelsea paid for the furnace, the air conditioner, and a window when they needed to be replaced. Defendant testified that she did not learn that plaintiff purchased the vacant property until his daughter called her and told her about it; plaintiff never discussed it with her and she never saw the property. Defendant testified that she paid all the bills associated with the 72nd Street property, including the water, electric, and heat, and plaintiff paid the bills for the 124th Street property. Defendant testified that when she signed the quit claim deed, plaintiff had said it was just for medical purposes and she did not understand that he would get full ownership rights to her property; if she had known, she would have never signed it. She understood "for medical purposes" to mean that if anything happened to plaintiff, defendant would give plaintiff's property to his kids and if anything happened to her, plaintiff would give defendant's property to her kids. Defendant acknowledged that plaintiff received a $30,000 lawsuit settlement but denied that plaintiff paid for improvements to the 72nd Street home. She paid $5,000 for the window in front of the house—that is what it cost—and she paid for the new concrete; plaintiff did not pay for any of it.

On the second day of the bench trial, Frederick Omwenga testified. Defendant is the mother of his ex-girlfriend, Chelsea. He and Chelsea lived in a house located at 152 Majestic that he had purchased. They moved into the house in October 2013 and the relationship ended in December 2015. He sold the house to defendant in about July 2017 for $88,500. Omwenga arrived at that purchase price by splitting the equity in the house with Chelsea, as determined following an appraisal, added on to what he still owed on the mortgage.

The next witness was Chelsea Johnson, defendant's daughter. Chelsea lives at 152 Majestic Street and moved into that house in 2013 when she and her ex-boyfriend were purchasing the house. They broke up in December 2015, and he moved out in January 2016. Her mother, defendant, purchased the house in November 2017. But between the time Omwenga moved out and when her mother purchased the house, Chelsea was making the house payments. Chelsea did not purchase the house herself because of credit issues. After her mother purchased the house from Omwenga, Chelsea never believed that she was renting the house from her mother; rather, she was making payments to her for the purchase of the house. And when a new furnace and air conditioner were needed in August 2019, Chelsea bought them at a cost of about $5,200. She also did painting and worked on the front door herself.

The final witness was Kathleen Kenney, plaintiff's daughter. Plaintiff purchased a property and put her name on it but she did not contribute any money toward the property. Plaintiff also told her that "he wanted, quote, that bitch's, Chelsea's, house." Kenney admitted that she was estranged from plaintiff; she had not spoken with him in about two years. Thereafter, the court advised the parties to submit their closing arguments in writing.

On October 14, 2022, plaintiff submitted his closing argument. Plaintiff argued that the property located at 106 72nd Street, in Grand Rapids, was marital property because it was jointly owned before they were married and defendant contributed to the improvement and maintenance of the property during the marriage. The property located at 8404 West 124th Street, in Grant, was marital property because it was jointly owned before they were married. The property located at

152 Majestic Street, in Kentwood, was purchased during the marriage in 2017 and a home equity loan on the home located at 72nd Street was used in part to purchase that property, i.e., marital funds were used. And the vacant property that plaintiff purchased for $3,000 was marital property also. These four properties were marital properties, plaintiff argued, and should be divided as such. In his proposed judgment of divorce, in relevant part, plaintiff awarded himself the 124th Street house with a value of $50,618 and the vacant property with a value of $6,000, and awarded defendant the 72nd Street house with a value of $235,000 and the 152 Majestic house with a value of $140,000 and determined, after other distributions, that he was entitled to an equalization payment of $171,624.52.

On October 14, 2022, defendant also submitted her closing argument. Defendant argued that a divorce case is equitable in nature and requires the trial court to consider a number of factors when determining its equitable distribution of the parties' assets. First, defendant argued, the house at 152 Majestic, while titled in her name, was held in constructive trust for her daughter Chelsea who had lived there for years with her boyfriend and then after they broke up. Defendant purchased the house because Chelsea had credit issues but Chelsea paid for all of the bills, repairs, and maintenance of that house, totaling over $43,000. Defendant relied on the case of *Gates v Gates*, 256 Mich App 420, 427-429; 664 NW2d 231 (2003), which was factually comparable, to support her argument that this house was held in trust for Chelsea. Further, the purchase price of the house was significantly reduced to account for the fact that Chelsea had contributed to accruing the equity over the course of years and, after defendant purchased it, Chelsea continued to contribute to the accrual of its equity by making mortgage payments—not rental payments. Therefore, this house should be awarded to defendant with a zero value.

Second, defendant argued, the house at 72nd Street had been owned by defendant since 1991 and plaintiff had owned his house at 124th Street since 2006. The parties agreed to put each other's names on their properties but plaintiff's property had a mortgage of about $39,000 at that time and defendant's property had no mortgage. Defendant relied on the case of *Reeves v Reeves*, 226 Mich App 490, 492-496; 575 NW2d 1 (1997), to argue that the trial court should only divide the increase in the martial assets that occurred during the marriage—from start to end, and not the equity and value that had accrued before the marriage. In other words, defendant argued, the court should use the value of each home in 2014, at the start of the marriage, and in 2021, when the parties manifested an intent to lead separate lives. Defendant argued that the house at 124th Street should be awarded to plaintiff and it had an increase in value of $13,944, and the house at 72nd Street should be awarded to defendant and it had an increase of value of $15,000. The vacant land plaintiff purchased during the marriage should be awarded to him and is a marital asset with a value of $7,600. After all of their property is distributed, defendant argued that she was entitled to an equalization payment from plaintiff of $3,072.

On February 9, 2023, the trial court issued its opinion and order. The court noted that, as stated in *Reeves*, 226 Mich App at 495-496, real property could be both separate and marital property where a party solely purchased a property, paying the down payment and making improvements and payments, prior to the parties' marriage even if both parties' names were on the deed prior to marriage. But the appreciation and payments occurring during the marriage are considered marital property and subject to distribution. Thus, the trial court held that each party separately owned their homes prior to the marriage and each party paid the down payments, equity payments, and appreciation had occurred prior to the marriage—none of which was part of the

marital assets for distribution. "Only those payments and any appreciation which occurred during the marriage shall be considered as part of the marital estate." The court awarded defendant the house at 72nd Street and the value attributed to it was $7,000. The court awarded plaintiff the house at 124th Street and the value attributed to it was zero. Next, the trial court considered the home at 152 Majestic and noted that defendant's daughter lived at the home and was solely responsible for all the indebtedness, upkeep, and maintenance of the property. The court noted that, as stated in *Gates*, 256 Mich App at 428-429, property purchased during a marriage may be held in trust for another person and given a zero value with respect to asset distribution. And that is what happened in this case with respect to the home at 152 Majestic; it was a marital asset that was held in trust for the benefit of defendant's daughter—who lived at the house and paid the debt as well as for maintenance and improvements—and so it was awarded to defendant with a zero value.

On February 24, 2023, plaintiff filed a motion for reconsideration and request for relief, arguing in pertinent part that the parties executed quit claim deeds adding each other to their respective properties in 2012, two years before the marriage; thus, they both owned the properties located on 124th Street and 72nd Street at the time they were married in 2014 and the properties were marital assets. Plaintiff argued that the court incorrectly determined that those two properties were separate properties and that there was premarital equity in them because they were jointly owned properties before the marriage. Further, the property located at 152 Majestic was purchased during the marriage and was marital property subject to distribution; it was not owned by defendant's daughter. Plaintiff attached a proposed judgment of divorce. Plaintiff also filed a motion for stay pending appeal.

On March 16, 2023, defendant filed a motion to enter a proposed judgment of divorce that corrected errors in plaintiff's proposed judgment. Defendant also filed a motion to strike plaintiff's motion for reconsideration and motion for stay pending appeal as not in conformance with the court rules.

On June 5, 2023, the trial court entered a judgment of divorce which provided, in pertinent part, that plaintiff was awarded the property located at 8404 West 124th Street and the vacant property in Idlewild, Michigan. Defendant was awarded the property located at 106 72nd Street and the property at 152 Majestic. Plaintiff also was to pay defendant an equalization payment in the amount of $4,625.81.

On July 7, 2023, the trial court held oral argument on plaintiff's motions for reconsideration and for stay pending appeal. The parties primarily relied on their briefs and the trial court held that plaintiff failed to establish that palpable error was committed but a stay was granted pending the payment of a bond. On July 27, 2023, an order was entered by the trial court in that regard.

On June 23, 2023, while his motions were pending in the trial court, plaintiff filed his claim of appeal with this Court. Plaintiff argues on appeal that the trial court committed clear legal error in awarding each party one of the real properties as separate property because the evidence demonstrates that the properties were jointly owned two years prior to the marriage and both parties used and contributed to the properties during the marriage. Further, plaintiff argues, the trial court clearly erred when it awarded defendant the property located at 152 Majestic, and failed to award any equity to plaintiff, after concluding that the property was held in trust for the benefit of defendant's daughter, Chelsea.

-6-

## II.  ANALYSIS

### A.  STANDARD OF REVIEW

In *Hodge v Parks*, 303 Mich App 552, 554-555; 844 NW2d 189 (2014), this Court explained:

> In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010); *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). "Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made." *Id*. Special deference is afforded to a trial court's factual findings that are based on witness credibility. *Id*. at 358.

If the trial court's findings of fact are upheld, we must then determine whether the dispositive ruling was fair and equitable in light of those facts. *Sands v Sands*, 442 Mich 30, 34; 497 NW2d 493 (1993); *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). The dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that the division was inequitable. *Id*.

### B.  REAL PROPERTY DIVISION

In any divorce case, the trial court must divide marital property between the parties after first determining what property is marital and what property is separate. *Reeves*, 226 Mich App at 493-494. The goal of dividing marital assets at the time of divorce is to reach an equitable division under the circumstances presented in the case. *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). In *Sparks*, 440 Mich at 159-160, our Supreme Court articulated several factors that may be considered when distributing the marital assets and debts, when relevant to the case:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity.

There will be many cases when some or even most of these factors are irrelevant to the case. *Id*. at 159. And even those factors that do apply "need not be given equal weight where the circumstances dictate otherwise." *Byington v Byington*, 224 Mich App 103, 115; 568 NW2d 141 (1997). In other words, no rigid framework applies when considering the relevant factors; rather, the trial court has "broad discretion in fashioning its rulings and there can be no strict mathematical formulations." *Sparks*, 440 Mich at 158-159.

In this case, plaintiff appears to argue that the trial court inappropriately considered the home located at 8404 West 124th Street as plaintiff's separate—not marital—asset, and the home located at 106 72nd Street as defendant's separate—not martial—asset. The distribution of property in a divorce is controlled by statute, and MCL 552.19 provides for the division of property, including real property, "that shall have come to either party by reason of the marriage .

. . ." These two properties did not come to either party "by reason of the marriage;" rather, the parties both owned these properties before the marriage as joint tenants. The parties, as holders of these two properties as joint tenants, clearly wanted to sever their interests from each other with regard to these properties through this divorce action. Such was the case in *Reeves*, 226 Mich App at 492, 496. In that case, the defendant and the plaintiff had purchased two rental properties together and they were in both of their names before they were married. *Id*. at 492. But the defendant alone had paid for the down payments on the two properties. *Id*. Later, the parties married. *Id*. During the subsequent divorce proceeding, the trial court included as marital property the entire equity value of both of the rental properties, which was divided between the parties. *Id*. at 493. The defendant appealed and this Court held that the trial court erred in including the entire equity value of the rental properties in the marital estate. *Id*. at 496. This Court noted that the properties were purchased before the parties were married and the defendant alone had paid the down payments. *Id*. Therefore, it was only appropriate to include as part of the marital estate the increase in value that occurred between the beginning and the end of the marriage. *Id*. Any increase in value that occurred before the parties were married—either by the down payments or equity payments—was not part of the marital estate. *Id*.

It is apparent that the *Reeves* Court was mindful that, like partition actions filed under MCL 600.3304, divorce actions are equitable in nature. See MCL 552.12; MCL 600.3301; *Thames v Thames*, 191 Mich App 299, 302; 477 NW2d 496 (1991). "[A] court of equity molds its relief according to the character of the case." *Id*. "Once the court acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy." *Id*. Accordingly, in *Reeves*, because the defendant had actually paid the money to acquire the rental properties at issue before the marriage—and despite his future-wife's name being placed on the deeds—"the down payment, the equity built up before the parties' marriage, and any appreciation that occurred before the parties' marriage should have been considered defendant's separate estate." *Reeves*, 226 Mich App at 496.

Here, the trial court followed the reasoning of the *Reeves* Court and held that the party who was financially responsible for acquiring and maintaining the property, as well as building the equity and appreciation of the property, before the marriage, should be awarded that particular property in this divorce. See *id*. The evidence showed that defendant purchased her home located at 106 72nd Street in 1991—which means she owned it and maintained it for 21 years before plaintiff's name was placed on the deed in 2012. And defendant owned all of the equity in this property which appraised for $235,000; there was no mortgage on the property. The evidence also showed that plaintiff owned a home located at 8404 West 124th Street, which he bought in 2006, but plaintiff testified that it appraised for $79,000 and almost $28,000 was still owed on that property. Defendant testified that throughout their marriage, she paid all of the bills associated with the 72nd Street property and plaintiff paid all the bills for the 124th Street property. Plaintiff did not contest that testimony. And plaintiff testified that he wanted to be awarded the house on 124th Street and defendant should be awarded the property at 72nd Street. "The actions and course of conduct taken by the parties are the clearest indicia of whether property is treated or considered as marital, rather than separate, property." *Cunningham*, 289 Mich App at 209. We conclude that the trial court's factual findings were not clearly erroneous and that this dispositional ruling was fair and equitable in light of the facts of this case. See *Sands*, 442 Mich at 34; *Sparks*, 440 Mich at 151-152.

The trial court also concluded that, in light of the evidence and the holding in *Reeves*, only payments and appreciation that occurred during the marriage—between the beginning and the end of the marriage—with regard to each of these properties was properly considered part of the marital estate. We agree with the trial court. Plaintiff argues on appeal that he should have been awarded more than $7,000 with regard to the 72nd Street house that was awarded to defendant. However, the trial court noted that it was unable to compare the market values of the properties at the beginning and at the end of the marriage because the parties did not provide sufficient evidence in that regard. For example, although evidence of appraisals conducted in 2022 were submitted by the parties, no appraisal values were available for the properties in 2014 when the parties were married. But, the court concluded, it could consider whether a spouse had made a significant contribution to a property to warrant compensation.

The only evidence in that regard, the trial court noted, was that plaintiff had testified that he spent a majority of his $30,000 lawsuit settlement on improvements or repairs to the house on 72nd Street that was awarded to defendant. But plaintiff's claim was disputed by defendant's testimony that she paid for some of the improvements and plaintiff spent some of his settlement funds on his house on 124th Street. Defendant also testified that plaintiff took $12,000 of her money out of her safe to do a project on his property that he never repaid, although he had promised to repay that money. The trial court considered the evidence presented and concluded that plaintiff had spent $11,000 of the $30,000 on his own property improvements, leaving $19,000 which could have been spent on improvements to defendant's property. However, the court noted, plaintiff had taken $12,000 from defendant's safe that he did not repay, which left a balance of $7,000 as the value to be attributed as plaintiff's contribution to the house on 72nd Street. Although plaintiff challenges these factual findings on appeal, we accord special deference to a trial court's factual findings that are based on witness credibility and, here, we are not left with the definite and firm conviction that a mistake has been made. See *Woodington*, 288 Mich App at 357-358.

Next, plaintiff argues that the trial court clearly erred when it awarded defendant the property located at 152 Majestic, and failed to award any equity to plaintiff, after concluding that the property was held in trust for the benefit of defendant's daughter, Chelsea. We disagree.

The property located at 152 Majestic was purchased during the marriage in 2017, and thus, came to the parties "by reason of the marriage." MCL 552.19. Plaintiff testified that it was being rented to defendant's daughter Chelsea, but defendant testified that it was, in fact, purchased for Chelsea. It was undisputed that the property located at 72nd Street was used as collateral for the home equity loan and mortgage required to purchase the property at 152 Majestic. Chelsea testified that she and her ex-boyfriend had purchased the house but, when they broke up, she was unable to buy out his equity because of credit issues. So, her mother, defendant, purchased the house and Chelsea made payments to defendant which were then used to pay off the indebtedness. It was undisputed that Chelsea paid for all of the expenses associated with this property, including for all of the repairs and maintenance on the property.

In considering defendant's argument that this property, although martial property, was actually held in trust for the benefit of Chelsea, the trial court turned to this Court's decision in *Gates*, 256 Mich App at 427-428. In that case, the divorcing parties had financed a residence for the plaintiff's brother and his wife, who lived in the house but could not purchase it because of credit issues. The plaintiff's brother provided the down payment and made all of the mortgage

-9-

payments on the house; thus, the trial court awarded the property to the plaintiff, at a zero value, concluding that it was held in trust for the plaintiff's brother and all equity in the house was achieved solely through payments made by the plaintiff's brother and his wife. *Id*. at 428. This Court affirmed that decision, noting that the trial court correctly considered "the reality of the situation surrounding ownership of the house[.]" *Id*. at 428-429.

The trial court here concluded that the same rationale applied under the circumstances of this case. That is, the evidence was persuasive that the property was purchased for Chelsea, who had continuously lived in this house for years, and not only paid off the indebtedness, but also paid for all of the repairs, improvements, and maintenance. Although on appeal plaintiff disagrees with the trial court's conclusion, plaintiff directs us to no evidence that disputes defendant's trial testimony that Chelsea made payments to her that were sufficient to cover "the entire amount, including mortgage, taxes, insurance, and payments on the home equity line of credit." Plaintiff argues that the property was "purchased for $88,500, but is worth far more." That is actually consistent with the testimony of Frederick Omwenga who testified that he arrived at that purchase price by splitting the equity in the house with Chelsea, who had lived with him in that house since 2013. In other words, the house was worth more but Chelsea had contributed to the accrual of the equity in the house which reduced the purchase price when Omwenga sold the property to defendant. We conclude that the trial court's factual findings in regard to the property at 152 Majestic were not clearly erroneous and its award of the property to defendant at a zero value was fair and equitable under the facts of this case. See *Sands*, 442 Mich at 34; *Sparks*, 440 Mich at 151-152.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra